LAW, Appellant, v. DE NORMANDIE and wife, Respondents.

*November 6—December 2, 1958.*

For the appellant there was a brief by *Douglas, Omernik & Bitney* of Spooner, and oral argument by *E. E. Omernik*.

For the respondents there was a brief by *Becker, Kinnel, Doucette & Mattison* of Milwaukee, and oral argument by *Joseph J. Doucette*.

BROADFOOT, J.   The plaintiff contends that lot 8 is the southerly part of a peninsula connected with lot 1 by the causeway. The defendant contends that lot 8 is located upon an island.

Photostatic records of government surveys recorded in the office of the register of deeds of Burnett county indicate that the original government survey was made in 1856. The lake was shown thereon but the survey and field notes did not show any islands in the lake, although the record permits of an inference that there were islands therein. No tract of land designated as "government lot 8" was shown by the original survey but government lot 1 was so shown. Another government survey was made in 1912. This survey shows an island in the lake designated as "Birch Island," and shown on a map to be an island. The surveyor's notes further show that the island was not occupied in 1912.

Upon the trial one Elmore testified that he purchased 1,100 acres of land from a Mr. Hatcher and that the land so purchased covered most of the north and part of the west side

of Birch Island lake. He further testified that the so-called island was a part of this tract of land. He did not testify that government lot 1 was part of the land he purchased and his deed does not appear in the record. He in turn sold some or all of the land he purchased to a corporation known as "Kilkare Lodge." Apparently the property was operated as a private club. The main building known as "Kilkare Lodge" was erected in 1928 and there is reference in the record to other cottages and a golf course thereon.

Plaintiff was an officer of the corporation and he testified that he obtained a ninety-nine-year lease of a portion of government lot 8 from the corporation and had a cottage constructed thereon which he and his family have occupied during the summer months since 1929. The lease was not introduced in evidence.

There was some travel over the strip of land beginning in 1910 except during periods of high water when the same could not be used. Plaintiff admits there was a period of two years when the causeway could not be used for travel. There is other testimony that the period was as much as five years.

The plaintiff contends that he acquired a right to use the causeway by prescription since he had traveled over it since 1929 except for the two years when it was partially covered by water due to a rise in the water level in the lake. It is his contention that he had used the causeway for more than twenty years prior to the commencement of the action, and as the user is not explained and had run for twenty years or more it was adverse and gave him a prescriptive right to continue to use the same. Whatever rights the plaintiff acquired to use the causeway prior to 1941, when he obtained his deed, were by virtue of the lease. Since the lease was not put in evidence there is a convincing inference that plaintiff's use of the causeway was permissive because of the lease. There is no testimony with reference to any act or acts that

would show that plaintiff was claiming any rights to the causeway adverse to the owner, whoever the owner might be.

In 1941 the legislature enacted sub. (2) of sec. 330.12, Stats., which provides that the mere use of a way over uninclosed land shall be presumed to be permissive and not adverse. The causeway was and is uninclosed. In addition to the presumption that plaintiff's use of the causeway was permissive and not adverse under the statute, he had not acquired an easement by prescription at the time the gate was erected in 1948.

The plaintiff further contends that he had an easement of necessity. This argument is based upon the contention that the corporation, Kilkare Lodge, owned not only lot 1 but lot 8 and the causeway connecting them. There is no proof in the record that Kilkare Lodge owned lot 1 nor that any individual or corporation ever owned the causeway. The defendant insists that the causeway was a mere sand bar which was built up in the late forties to make it passable during periods of high water and that a portion of the causeway was constructed upon the bed of the lake, title to which is in the state.

From the record we are unable to determine who had title to the causeway. The trial court was correct when it stated that there was no proof of ownership or title thereto. Thus plaintiff is unable to show that he acquired a way of necessity across the causeway.

The plaintiff further contends that he and the defendant each has an easement to use the causeway and that one tenant in common may not take such possession of the estate as would injure the equal rights of his cotenants. Since neither of the parties has established an easement by prescription or way of necessity that argument has no force.

Finally the plaintiff contends that the gate across the causeway was a nuisance and that relief by injunction was

the proper remedy to pursue to remove the obstruction from the causeway. The trial court held that there was no nuisance. The action was commenced to enjoin the defendants from interfering with plaintiff's right to use and enjoy his interest in the causeway. Since he established no interest therein his action failed and was properly dismissed. The determination that the gate was not a nuisance was unnecessary to the determination of the case but will be permitted to stand, but only on the basis that it shall not be *res judicata* in any future action where the issue might be interference with the use and enjoyment of plaintiff's property on lot 8.

*By the Court.*—Judgment affirmed.

Brown, J., took no part.