ESTATE OF SCHMALZ: SCHMALZ and others, Appellants, v. MCKENNA and others, Respondents.

*No. 81. Argued February 27, 1973.—Decided April 20, 1973.*
(Also reported in 206 N. W. 2d 141.)

222

224

For the appellants Julius Schmalz, Marie Theresa Vredenbreght, Mary Ann Fellner, Robert A. Vida, Marjorie Vida and Joseph Bauernfeind, there were briefs by *Petrie, Stocking, Meixner & Zeisig, S. C.,* and *Edmond F. Zeisig,* all of Milwaukee, and oral argument by *Edmond F. Zeisig.*

For the respondents there was a brief by *Harold R. Cox,* attorney, and *Stephen R. Miller* of counsel, both of Milwaukee, and oral argument by *Mr. Miller.*

BEILFUSS, J.   We first consider the respondents' claim of estoppel by record in the proceedings for admission of the will to probate.[3]   The doctrine of estoppel by record prevents a party from litigating again what was actually litigated or might have been litigated in a former action. *Gohr v. Beranek* (1954), 266 Wis. 605, 64 N. W. 2d 246; *Kuchenreuther v. Chicago, M., St. P. & P. R. Co.* (1937), 225 Wis. 613, 275 N. W. 457.   The constructive trust issue raised by the appellants in their objection to the admission of the will to probate could not be determined in that proceeding.   The only question was whether the paper purporting to be the will of the testator represented his legally declared final wishes as to the postmortem disposition of his estate. *Will of Rice* (1912), 150 Wis. 401, 136 N. W. 956, 137 N. W. 778.   Whether the disputed will provisions were contractual and whether

---

[3] The respondents have a motion to review.

Margaret Mueller had breached the contract so as to disable her from taking under them were irrelevant for the purpose of determining whether the will should be admitted to probate. Accordingly, appellants were not estopped by the record and the trial court was correct in denying respondents' motion to dismiss on that ground.

The appellants contend that Margaret Mueller would be unjustly enriched if she were permitted to take the property given to her under the provisions of the will and that to prevent this unjust enrichment equity should impose a constructive trust for the benefit of the residuary beneficiaries.

It is the appellants' claim that Margaret's failure to perform under the contract, except as to a nominal amount, constituted a breach of the contract and that by the mutual assent of both John and Margaret the contract was rescinded. They further assert that provisions in the will of March 23d for the benefit of Margaret were made only because it was contemplated that Margaret would comply with the contract and because she had done practically nothing for John she would be unjustly enriched.

The appellants concede John was competent to draw the will and that no undue influence, fraud or coercion has been exercised by Margaret upon John but insist that under the expanded test for the imposition of constructive trust of *Estate of Massouras* (1962), 16 Wis. 2d 304, 114 N. W. 2d 449, it would be unconscionable and inequitable to allow Margaret to take under the will.

In *Massouras*, the court stated at pages 312, 313:

"The facts in this case call for the imposition of a constructive trust. Such a trust is implied by operation of law as a remedial device for the protection of a beneficial interest against one who either by actual or constructive fraud, duress, abuse of confidence, mistake, commission of a wrong, or by any form of unconscionable conduct, has either obtained or holds the legal title to property which he ought not in equity and in good conscience beneficially enjoy. [Cases cited.]

"It was pointed out in *Masino v. Sechrest* (1954), 268 Wis. 101, 66 N. W. (2d) 740, and in *Nehls v. Meyer* (1959), 7 Wis. (2d) 37, 95 N. W. (2d) 780, that a constructive trust is a device in a court of equity to prevent unjust enrichment which arises from fraud or abuse of confidential relationship and is implied to accomplish justice. In those cases, the grantee of property would have been unjustly enriched by a repudiation of an agreement. Similarly, here, the petitioner would be unjustly enriched by repudiation of the property settlement. Dean Pound observed, 'Thus constructive trust could be used in a variety of situations, . . . and sometimes to develop a new field of equitable interposition, as in what we have come to think the typical case of constructive trust, namely, specific restitution of a received benefit in order to prevent unjust enrichment.' The Progress of Law, Equity, 33 Harvard Law Review (1920), 420, 421. Restatement, Restitution, Constructive Trust, p. 640, sec. 160, states the rule as follows:

" 'Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises.'

"We consider the language in *Will of Jaeger* (1935), 218 Wis. 1, at page 13, 259 N. W. 842, that a constructive trust does not arise in the absence of fraud, positive or constructive, to be a too-limited statement of the basis for the imposition of a constructive trust as a 'formula through which the conscience of equity finds expression.' See *Beatty v. Guggenheim Exploration Co.* (1919), 225 N. Y. 380, 386, 122 N. E. 378 (Cardozo)."

The least the appellants must prove under the *Massouras* rule is that there must have been some "form of unconscionable conduct" on the part of Margaret. The findings of the trial court make it clear that there was no unconscionable conduct on the part of Margaret. Throughout the relations between John and Margaret, John was the dominant one. It was John who asked Margaret to be his housekeeper and companion; it was he who suggested the contract and dictated its terms. He drew the will of March 23d without any prompting by

Margaret, in fact without her knowledge. There is no evidence in the record to establish any wrongdoing or unconscionable conduct on the part of Margaret. Under the facts of this case as they appear in the record, and as set forth above, our holding in *Massouras* does not compel nor permit the imposition of a constructive trust.

We are urged, in effect, to go beyond *Massouras* [4] and to impose a constructive trust upon the ground of unjust enrichment alone. We do not believe the facts of this case establish unjust enrichment on the part of Margaret. Neither at the time of the drawing of the March 23d will nor thereafter did John owe any duty [5] to the residuary legatees. John, upon this record, had no obligation, legal or otherwise, to make provision for them in his will; nor was Margaret guilty of any fraud, coercion, undue influence or unconscionable conduct that deprived them of anything that in equity and good conscience they were entitled to have. They have not established a greater equitable right to John's property than Margaret has.

This is not a case for the imposition of a constructive trust.

The will was admitted to probate. There are no facts which would permit a construction of its unambiguous terms. To do so would conflict with the sanctity the law affords to wills.

In *Estate of Wilkins* (1927), 192 Wis. 111, 112–115, 211 N. W. 652, this court stated:

"In the case of *Nunnemacher v. State,* 129 Wis. 190, 108 N. W. 627, it is said:

" 'The right to take property by inheritance or by will is a natural right protected by the constitution which cannot be wholly taken away or substantially impaired by the legislature. . . .'

" . . .

"In *Will of Rice,* 150 Wis. 401, 136 N. W. 956, 137 N. W. 778, this court held:

---

[4] *See Kent v. Klein* (1958), 352 Mich. 652, 91 N. W. 2d ·11.

[5] *See Richards v. Richards,* post, p. 290, 206 N. W. 2d 134.

" 'The right to make a will is more sacred than the right to make a contract. The right to make a will is incidental to the right to acquire property and so is one of the inherent rights guaranteed by the constitution. It antedates common and civil law. It is sacred in all nations and under all conditions. It is guaranteed by sec. 1, art. I, of the constitution and also by sec. 13, art. XIV.'

"The language thus quoted is clear and explicit. It contains no ambiguities, and it is expressive of a constitutional guaranty relating both to personal rights and rights of property. So firmly are the foregoing doctrines, expressed in the *Nunnemacher* and *Rice Cases* and in numerous other cases decided by this court, entrenched in the jurisprudence of this state, that any attempt at this date to modify or upset them must be deemed futile. This sacred right to make a will rests entirely with the testator, who under our law can dispose of his property in accordance with his volition, excepting only as to certain rights which are extended by statute to a specified class of persons, designed for their protection as a matter of public policy. Under this exception comes the right of a widow to renounce the provisions of the will by accepting her statutory rights of dower. A testator may ignore wholly, if he desires, those in close relation to him by ties of blood, and he may bestow his devises and bequests upon persons who are ordinarily not deemed the objects of his bounty. Nor is any one permitted to make a will for him; neither can the courts change or modify a will, or substitute in its place one which they deem more equitable and just, for to permit this would destroy the sacredness of a will and would substitute in its place the will of another.

" . . .

"Under the provisions of sec. 238.14 of the Statutes 'The power to make a will implies the power to revoke the same.' Edith Wilkins, therefore, not only had the sacred right to make the will in question, but she also possessed the right and power at any time during her life to revoke the same, and the power of revocation is equally as sacred as the power of making. It not infrequently happens that a testator arrives at a determination to revoke or modify his will, but before he is enabled to effectuate a change or revocation he meets with sudden

death by accident or disease. Such occurrences, however, cannot affect the enforcement of the will so made, regardless of the high degree of proof that may be offered with respect to the testator's determination. In instances like these, sec. 238.14 comes into operation, for it determines how a will or any part thereof may be revoked or modified. A beneficiary under a will may be guilty of the commission of an atrocious crime upon the testator which may result in suffering and eventual death. Still, if the testator lives a reasonable time after the commission of the offense, and during such time retains his competency to make a new will or to revoke or modify the one already made, but fails or refuses to make a change, the will nevertheless becomes effective and must be enforced in accordance with its terms, and the offender will take thereunder, provided he is a beneficiary, notwithstanding his offense."

Nor do the facts of this case permit the imposition of a constructive trust, notwithstanding a breach or rescission of the contract. The will makes no reference to the contract and is not dependent upon it.[6] There is no ambiguity upon the face of the will. There has been no fraud, duress, abuse of confidence, mistake, commission of a wrong or "any form of unconscionable conduct" on the part of Margaret. There is nothing in the record that even indicates she was aware of or knew about the March 23d will. The deceased had ample opportunity to revoke the will by any of the methods prescribed in sec. 853.11, Stats. In fact, he had almost one full month to revoke the will after April 10th, but before he was able to effectuate a change or revocation he died after suffering a stroke on May 9th. The deceased was asked to wait at the attorney's office on May 6th but he declined. Then it was too late. The deceased controlled the course of events, not Margaret. Such occurrences cannot affect

[6] *See Will of Derusseau* (1921), 175 Wis. 140, 184 N. W. 705, 16 A. L. R. 1412.

the enforcement of the will so made notwithstanding the proof proffered on the testator's intentions. *Estate of Wilkins, supra.*

*By the Court.*—Judgment affirmed.