LEIMERT, Plaintiff-Respondent, v. McCANN, Defendant-Appellant.

*No. 75–469. Submitted on briefs June 2, 1977.—*
*Decided July 1, 1977.*
(Also reported in 255 N. W. 2d 526.)

290

For the appellant the cause was submitted on the briefs of *Nelson & Nelson* of St. Paul, Minnesota.

For the respondent the cause was submitted on the brief of *Doar, Drill, Norman & Bakke* of New Richmond.

ROBERT W. HANSEN, J.  The primary challenge on this appeal is to the trial judge's factual finding of twenty years of adverse user and the concomitant conclusion of law that an easement by prescription had thus been established.

However, before reaching this issue, we must first deal with the claim of estoppel by record. The doctrine of estoppel by record prevents a party from litigating again what was actually litigated or might have been litigated in a former action.[1] Closely related is the doctrine of res judicata. This latter doctrine has the effect of making a final adjudication conclusive in a subsequent action between the same parties, or their privies,[2] not only as

[1] *Estate of Schmalz,* 58 Wis.2d 220, 226, 206 N.W.2d 141 (1973), citing *Gohr v. Beranek,* 266 Wis. 605, 64 N.W.2d 246 (1954). *See: Kuchenreuther v. Chicago, M., St. P. & P. Ry. Co.,* 225 Wis. 613, 275 N.W. 457 (1937).

[2] *Gohr v. Beranek, supra,* n. 1, at 610, quoting with approval from 50 C.J.S., *Judgments,* sec. 598, page 16, stating: " 'A final

to all matters which were litigated, but also as to all matters which might have been litigated in the former proceedings.[3]

In order for either doctrine to apply as a bar to a present action, there must be both an identity between the parties or their privies—which we have here—and an identity between the causes of action or the issues sued on, which we may not have here.[4]

The threshold question presented is whether the issues here litigated were or could have been litigated in the earlier injunction-seeking action between the predecessors in title of the parties here.[5] The prior action was commenced to enjoin defendant McCann's predecessor in title from interfering with the right of plaintiff Leimert's predecessor in title to use and enjoy his interest in the causeway.[6]

The trial court in the prior case had concluded that the access-blocking gate was not a nuisance, and that plaintiff "had acquired no rights of user in the cause-

valid judgment on the merits by a court of competent jurisdiction bars any future suit between the same parties or their privies on the same cause of action. . . .' "

[3] *Laundry v. Schott,* 54 Wis.2d 723, 725, 196 N.W.2d 692 (1972), citing *Werner v. Riemer,* 255 Wis. 386, 403, 39 N.W.2d 457, 39 N.W.2d 917 (1949). *See also: Cohan v. Associated Fur Farms, Inc.,* 261 Wis. 584, 597, 53 N.W.2d 788 (1952); *Northwestern National Casualty Co. v. State Automobile & Casualty Underwriters,* 35 Wis.2d 237, 244, 151 N.W.2d 104 (1967).

[4] *Gohr v. Beranek, supra,* n. 1, at 610, quoting with approval from 50 C.J.S., *Judgments,* sec. 598, page 16, stating: " 'A final valid judgment on the merits by a court of competent jurisdiction bars any future suit between the same parties or their privies on the same cause of action; identity of the thing sued for, of the causes of action, of the parties to the action, and of the quality or capacity in which the parties sue or are sued is essential to the application of the doctrine.' "

[5] *Law v. De Normandie,* 5 Wis.2d 546, 93 N.W.2d 332 (1958).

[6] *Id.* at 551.

way."[7] In affirming that decision, our court held that "there is a convincing inference that plaintiff's use of the causeway was permissive because of the lease,"[8] under which he held the land from 1929–1940. On the question of nuisance, our court decided such finding was unnecessary to the determination of the case but permitted it to stand "only on the basis that it shall not be res judicata in any future action where the issue might be interference with the use and enjoyment of plaintiff's property."[9]

This sharp limitation on the reach and effect of the judgment in the earlier case makes it difficult to hold that the present lawsuit—dealing with the roadway, not the causeway—and claiming interference with the use and enjoyment of plaintiff's property on Lot 8, is barred either by estoppel of record or by res judicata.

In affirming the trial court holding that neither estoppel by record nor res judicata here applies, we rely in part on our holding in *Estate of Schmalz.*[10] There this court found no estoppel by record as to a claim of a constructive trust in a will contest, finding that such issues raised in the objections to admission of a will ". . . were irrelevant for the purpose of determining whether the will should be admitted to probate."[11]

---

[7] *Id.* at 548.

[8] *Id.* at 549, also finding no easement by necessity because, as to the causeway, ". . . there was no proof of ownership or title thereto." *Id.* at 550.

[9] *Id.* at 551.

[10] *Estate of Schmalz, supra,* n. 1.

[11] *Id.* at 227. *See also: Keller v. Schuster,* 54 Wis.2d 738, 742, 196 N.W.2d 640 (1972), holding: "It is the general rule that, for a judgment to operate as res judicata and be conclusive evidence of a fact sought to be established by it, '. . . it must appear that the fact was a material or essential one, and that the judgment could not have been rendered without deciding the matter. . . .'" Quoting 46 Am. Jur.2d, *Judgments,* page 593, sec. 423.

Since we view the prior decision of *Law v. De Normandie* as limited to determining respective interests in the causeway, not the roadway, and since that prior judgment expressly does not apply to future actions relating to use and enjoyment of the lot here involved, we agree that the action here was not barred by the doctrines of estoppel by record or res adjudicata.

Coming then to the trial court's finding of twenty years of adverse use, we begin by noting that such finding of fact and a determination based thereon must be sustained on appeal unless such finding of fact is against the great weight and clear preponderance of the evidence.[12] It is not sufficient for reversal that there is evidence to support a contrary finding.[13] To command such reversal, such evidence in support of a contrary finding must itself constitute the great weight and clear preponderance of the evidence.[14] Thus, the standard for reversal is heavily weighted on the side of sustaining trial court findings of fact in cases tried without a jury.[15]

In the case before us, the trial court found the plaintiff and her predecessor in title had used the road across defendant's property "openly, notoriously, continuously and adversely" since plaintiff's father leased the lot involved and built two cabins on it, back in 1929. Plaintiff's father purchased the lot in 1940, and thus the trial court found an easement by prescription to exist.

While there is evidence in this record to support a contrary finding, the trial court resolves questions of credi-

---

[12] *In re Estate of Jones*, 74 Wis.2d 607, 610, 611, 247 N.W.2d 168 (1976).

[13] *Id.* at 611, citing *Peabody Seating Co. v. Jim Cullen, Inc.*, 56 Wis.2d 119, 127, 201 N.W.2d 546, 551 (1972).

[14] *Id.* at 611.

[15] *Id.* at 611.

bility and disputes in testimony. Defendant here claims the use of the road by plaintiff was not "hostile," but our court has made clear that "hostile" does not mean "unfriendly intent" or require "a manifestation of ill will."[16] Rather an act is "hostile" in this context ". . . when it is inconsistent with the right of the owner and not done in subordination thereto."[17]

Accordingly, we affirm the finding of fact of the trial court concerning adverse use as not being against the great weight and clear preponderance of the evidence, and as meeting the criteria for establishing an easement by prescription in Wisconsin.[18] With the required period for creation of such easement by adverse use being twenty years,[19] we agree with the trial court that certainly from the year 1940, when the defendant's predecessor in title bought the defendant's property, the prescriptive period began to run and was completed in 1960.

We note defendant's contention that the plaintiff here is precluded from asserting her claim of easement because she failed to file timely notice of claim in the office of the register of deeds. Defendant relies upon sec. 893.15(1)–(6), Stats. Sub. (1) of the statute provides that no claims affecting the title of any real estate shall be commenced more than thirty years after the transaction or event on which they are based.

[16] *Shellow v. Hagen,* 9 Wis.2d 506, 511, 101 N.W.2d 694 (1960).
[17] *Id.* at 511.
[18] *Mayer v. Grueber,* 29 Wis.2d 168, 177, 138 N.W.2d 197 (1965), the court there finding: ". . . the requisites for establishing a right by prescription in Wisconsin include (1) adverse use that is hostile or inconsistent with the exercise of the title holder's rights, (2) visible, open, and notorious action, (3) open claim of right, and (4) continuous and uninterrupted use for the entire period required by the statute of limitations."
[19] Sec. 893.10, Stats.

Our court has held, as to this subsection: "The transaction or event referred to in sub. (1) as applied to adverse possession means adverse possession for the period of time necessary under the circumstances to obtain title. Upon the expiration of such period of time the thirty-year period commences to run."[20] Applying the *Herzog* holding to the case at bar, we have a period of prescriptive use beginning in 1941 and running for the required twenty-year period until 1961. It is at that point in 1961 that the thirty-year limitation attaches. Thus the present claim of easement by prescription would not be barred until 1991.

We also note, no more, defendant's contention that he was a good faith purchaser for value without notice of any claim of easement against his land and thus his purchase of the land from the previous owner extinguished plaintiff's unrecorded easement. The applicable statute provides that a purchaser can have notice of use and occupancy of real estate even if unrecorded.[21]

---

[20] *Herzog v. Bujniewicz*, 32 Wis.2d 26, 31, 145 N.W.2d 124 (1966). *See also:* Annot., *Construction of 'marketable title,' 'ancient claims extinguishment,' and like statutes, terminating or limiting enforcement of rights, interests and claims respecting real property based on old records, instruments, or events*, 71 A.L.R.2d 846 *et seq.* (1960).

[21] Sec. 706.09(2)(a), Stats., provides: "(a) *Affirmative notice.* Such purchaser has affirmative notice apart from the record of the existence of such prior outstanding claim, including notice, actual or constructive, arising from use or occupancy of the real estate by any person at the time such purchaser's interest therein arises, whether or not such use or occupancy is exclusive; but no constructive notice shall be deemed to arise from use or occupancy unless due and diligent inquiry of persons using or occupying such real estate would, under the circumstances, reasonably have disclosed such prior outstanding interest; nor unless such use or occupancy is actual, visible, open and notorious."

The trial court refused to find that defendant was a good faith purchaser for value without notice. Instead, the trial court found that defendant, prior to acquiring the island property "was aware of the roadway which crossed the property he did acquire, and that [it was] used by other residents of the Island, and as a matter of fact, [he] used and traversed the road prior to acquiring his present property."

That finding of fact is clearly not contrary to the great weight and clear preponderance of the evidence on this record. Defendant here was on constructive notice that others—the plaintiff included—were users and claimed the right to use the roadway that crossed his property. He failed to inquire at the time whether such use was claimed by any other residents.

Defendant claims that letters allegedly written subsequent to his purchase of the property went unanswered by plaintiff, and thus there is no reason to assume she would have responded to an inquiry at that time. However, the statute contemplates inquiry prior to purchase, and failure to inquire at that time cannot be excused by alleged subsequent refusals to respond.

Finally, we take up defendant's contention that the trial court finding of easement by prescription is here barred by an alleged unity of ownership in the two parcels of land in question until December 16, 1955. This is the date on which the predecessors in title of plaintiff and defendant both received quitclaim deeds to their properties from the state of Wisconsin.

The reason for both owners desiring and paying nominal amounts of money to the state for such deeds, derives from an Act of Congress, back in 1912,[22] granting to this state all unsurveyed and unattached islands in

---

[22] Public Act No. 283, H.R. 13417, enacted by United States Congress on August 22, 1912.

the state as additions to the state forest preserve, with a provision for reversion to the federal government in certain situations. This provision for reversion was terminated in 1938.[23] Defendant's contention is that adverse possession or easement by prescription of the land of another could not exist if the state had unitary ownership of the entire island until it quitclaimed its interest to plaintiff and defendant.

There is no gainsaying that the general rule as to creation of an easement by prescription defines such easement as an "interest in land which is in the possession of another."[24] Such easement is, by definition, "a liberty, privilege or advantage in land, without profit, existing distinct from the ownership of the soil."[25] Our court has held that such easement is a " 'permanent interest in the land of another, with the right to enjoy it fully and without obstruction for the period of the easement.' "[26]

However, in the case before us, the trial court was not required to find—and did not find—that the state of Wisconsin had valid and full legal title to the entire Birch Island until it executed quitclaims of its claims of title to the predecessors in title of this plaintiff and this defendant. Instead, the trial judge found only that the plaintiff's predecessor in title "obtained a quitclaim deed from the State of Wisconsin."[27]

---

[23] Ch. 774–3D, Session Public Resolution No. 126—75th Congress (1938).

[24] 3 Powell on Real Property, sec. 405, pages 386, 387.

[25] *Schwartz v. Evangelical Deaconess Society*, 46 Wis.2d 432, 437, 175 N.W.2d 225 (1970).

[26] *Public Service Corp. v. Marathon County*, 75 Wis.2d 442, 446, 249 N.W.2d 543 (1977), quoting *Schwartz v. Evangelical Deaconess Society, supra*, n. 25, at 438.

[27] Decision of Trial Court, Findings of Fact, after finding that: "(7) The original United States Government survey showed the lake on which the island is located, but did not show any

A quitclaim deed is defined as "a release or acquittance given to one man by another, in respect of any action that he has or might have against him; also acquitting or giving up one's claim of title."[28] On this record, we see no more established than that the state gave up any claim of title it may have had to the island property when it quitclaimed any such interest it may or may not have had.

The execution of the quitclaim deed here does not establish that the state had valid title to the property quitclaimed. Here the predecessors in title of plaintiff and defendant both took from Kilkare Lodge, Inc., by warranty deed back in 1940–1942. Both predecessors in title exercised all indicia of ownership. The state asserted or exercised no indicia of ownership whatsoever from 1912 until 1955, when it quitclaimed any interest it may have had in these properties to the predecessors in title of plaintiff and defendant.

Without ruling on the consequences of establishing unitary ownership of the island by the state—as between the two parties—we find no definitive proof establishing the state to be such unitary owner, and agree with the trial court that what was here established indicates only that the state of Wisconsin acquitted or gave up only its possible and unasserted claim of title to the properties here involved. This does not defeat plaintiff's claim or the trial court's holding that an easement by prescription is here established by twenty years of adverse user.

Affirming the trial court's finding of fact that twenty years of adverse user was here established and affirming the trial court's holding that an easement by prescription was here created, it is unnecessary to deal with the con-

island in the lake," finding only that "(10) In 1955, plaintiff's predecessor in title obtained a quitclaim deed from the State of Wisconsin for the southeast portion of Birch Island."

[28] 74 C.J.S., *Quitclaim,* sec. 114, page 169.

tention of the plaintiff that the trial court here should have also found an easement by necessity to have been created. The easement by prescription means that this plaintiff does not have to go by boat to get to her property on the island. As she has long done, and as her father did before her, she can drive by car on the road across defendant's property. One sound legal basis for her being able so to do is all that she needs to get by land to her island home. Under the trial court decision, here affirmed, she makes the trip by way of an easement by prescription.

*By the Court.*—Judgment affirmed.