COURT OF APPEALS
DECISION
DATED AND FILED

April 13, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1453**

Cir. Ct. No. 2018PR326

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

IN THE MATTER OF: THE SCHANOCK TRUST OF 1993:

ANN L. STARK,

    RESPONDENT,

  V.

DAN R. SCHANOCK,

    APPELLANT.

APPEAL from an order of the circuit court for Brown County: WILLIAM M. ATKINSON, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Dan Schanock appeals an order declaring that a $75,000 check he received from his mother, Mary Schanock, constituted a loan, and offsetting that amount against his share of an inheritance from his parents' trust. Dan argues that the money was not a loan but, rather, an investment in a Florida company that was funneled through him on Mary's behalf.[1]   We reject Dan's arguments and affirm the order.

## BACKGROUND

¶2      Romaine and Mary Schanock, husband and wife, were the grantors of the Schanock Trust of 1993 ("the Trust"), and they were its initial trustees.   After their deaths in October 2014 and October 2015, respectively, Associated Trust Company, N.A. ("Associated") succeeded them as trustee, with Fiduciary Partners Trust Company ("Fiduciary") later succeeding Associated as trustee.   The Trust provided that upon the deaths of both grantors, the trust assets were to be divided among the couple's five children "in shares of substantially equal value."

¶3      Ann Stark,[2] as Fiduciary's representative, filed the underlying petition for declaratory judgment, asking the circuit court to determine whether a $75,000 check represented an outstanding loan from Mary to Dan that would offset his share of the inheritance under the Trust.   At a bench trial, the court heard testimony that photocopies of two checks issued by Mary were found in a bank bag, located in a drawer underneath Mary's bed—a $75,000 check to Dan dated January 24, 2006, and a $70,000 check to Mary's daughter, Debra Daffinson, dated February 1, 2006.

---

[1]  Because Dan shares a last name with other individuals discussed herein, we will refer to him by his first name to avoid confusion.

[2]  We note that although the respondent shares a last name with a member of this judicial panel, there is no known familial relationship between them.

The bag had "Associated Bank" printed on one side and the word "loans" written on the other side. The bag was discovered by Mary's daughter, Donna Stout, who testified that when her parents were still living, she found the bag while attempting to locate and secure her mother's jewelry because several caregivers were "in and out of the house." The bag was then placed in a safe and given to the trustee after Mary's death.

¶4     Regarding the check to Daffinson, Stark testified that Daffinson acknowledged to her that the $70,000 was a loan. Daffinson clarified at trial that she did not initially view the check as a loan, but she later questioned whether she misremembered, and she ultimately agreed to offset her distribution from the Trust by that amount.

¶5     Dan disputed that the $75,000 check was a loan, testifying that the check issued to him was deposited in his account and then invested in a Florida company, Wellington Group Enterprises, LLC, on Mary's behalf. Dan testified that he had arranged numerous investments for his father, but this was the first he had arranged for his mother. Dan's sister, Darcy Cregan, and Dan's son, David Schanock, both testified that they were present with Dan when Mary was involved in a phone conversation regarding an investment in Florida. Both Cregan and David testified that they saw Mary then write a check and give it to Dan, but neither actually saw what was written on the check.

¶6     Dan provided a bank account statement reflecting a $75,000 check deposit on January 24, 2006, and a check in the same amount issued from his account on January 26. Dan also provided a photocopy of two pages from a checkbook ledger with a handwritten entry for January 24, reflecting a check written to Wellington Group, LLC, along with a note stating "Stocks for Mom,

John Tristino." Additionally, Dan provided a copy of a letter from Tristino, managing partner of Wellington Group, to Mary, verifying that the company "is insolvent" and that Mary invested $75,000.

¶7 In deposition testimony, the transcript of which was admitted into evidence at trial, Tristino explained that Wellington formed in January 2006 to invest in a company called Order Execution Service Holdings, Inc. According to Tristino, a $500,000 investment in Order Execution included $75,000 from Mary, but Order Execution went out of business "in 2007 or 2008" and Wellington was eventually dissolved in September 2012. Tristino testified that Dan did not provide funds to invest for Mary. Rather, Tristino spoke directly to Mary and "she invested with us." Mary's tax advisor and preparer, however, testified that he found no evidence of Mary's investment in Wellington, no tax form issued to Mary related to Wellington, and no declaration of a capital loss on her tax returns due to the failed investment.

¶8 The circuit court found that the $75,000 check from Mary to Dan represented a loan, which offset his share of the inheritance under the Trust. This appeal follows.

## DISCUSSION

¶9 Where, as here, the circuit court acts as the fact finder, an appellate court will not reverse a factual determination unless the finding is clearly erroneous. *See* WIS. STAT. § 805.17(2) (2019-20). In the absence of a jury, the circuit court is the ultimate arbiter of both the credibility of the witnesses and the weight to be given to each witness' testimony. *Gehr v. City of Sheboygan*, 81 Wis. 2d 117, 122, 260 N.W.2d 30 (1977); *Milbauer v. Transport Emps.' Mutual Benefit Soc'y*, 56 Wis. 2d 860, 865, 203 N.W.2d 135 (1973). This rule is especially true because

4

the trier of fact has the opportunity to observe the witnesses and their demeanor on the witness stand. When more than one reasonable inference can be drawn from the credible evidence, we must accept the inference drawn by the circuit court. *Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 249-50, 274 N.W.2d 647 (1979). We will set aside a court's factual finding only if the record shows it to be clearly erroneous, after accepting all credibility determinations made and reasonable inferences drawn by the fact finder. *Id.* Thus, in cases tried without a jury, "the standard for reversal is heavily weighted on the side of sustaining [circuit] court findings of fact." *Leimert v. McCann*, 79 Wis. 2d 289, 296, 255 N.W.2d 526 (1977).

¶10 Dan acknowledges, yet then ignores, the deferential standard of review we give to the circuit court, emphasizing the evidence that weighs in his favor. Dan disputes the relevance of finding the check in the bank bag marked "loans," noting that we do not know when or why the check was placed in that bag, nor do we know who placed it there. Dan thus argues that the mere existence of the check in the bank bag, without more, required the court to speculate that the check was intended as a loan. He further argues that the court erred by relying upon circumstantial evidence in the face of direct evidence that the check was an investment on Mary's behalf. We are not persuaded.

¶11 In declaring that the check was a loan, the circuit court recounted that the bank bag was located in an area under Mary's control and it had the word "loans" clearly written on it. The court, therefore, made the logical inference that Mary placed the check within the bag because she believed it to be a loan. According to the court, this logical inference is further supported by the other contents of the bag, including a loan check to another child. The court recognized that the checks found within the bag were "not simply a grouping of checks one would receive from the

5

bank with their monthly statement." Rather, they covered an eight-year period from December 2005 to May 2013. Their retention for a significant amount of time suggested to the court that Mary assigned a "unique significance to these checks." The court added that it was unreasonable to believe that Mary would not have considered a $75,000 loss an important amount to report to her tax preparer.

¶12 The circuit court recognized that Dan's checkbook ledger was consistent with Dan's claim that he deposited the check from Mary and immediately invested it in Wellington Group on her behalf. The court nonetheless determined that the submitted photocopy of Dan's checkbook ledger could not be given the same evidentiary weight as the original ledger, as the court was precluded from examining the ink or other indications to determine whether the entire entry was written at one time or subsequently modified. The court also discounted the weight of Dan's memory, noting "the difficulty of accurately recalling events 13 years ago." Acknowledging that it gave the greatest weight to the bank bag and its contents, as well as the tax preparer's testimony, the court found that the $75,000 check from Mary to Dan was a loan.

¶13 To the extent Dan argues that the circuit court erred by basing its conclusion on circumstantial, rather than direct evidence, "circumstantial evidence is often stronger and more satisfactory than direct evidence." *State v. Searcy*, 2006 WI App 8, ¶22, 288 Wis. 2d 804, 709 N.W.2d 497 (2005); *see also* WIS JI—CIVIL 230 (recognizing that circumstantial evidence is not necessarily better or worse than direct evidence; either type of evidence can prove a fact). The court's findings of fact and determinations based thereon were not clearly erroneous and were supported by the record. The mere existence of conflicting evidence is not a basis for reversal.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).