**Edgar LANDESS, Plaintiff-Appellant, Cross-Appellee,**

v.

**BORDEN, INC., Defendant-Appellee, Cross-Appellant.**

**Nos. 81–1360, 81–1464.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 3, 1981.

Decided Dec. 28, 1981.

As Corrected Dec. 28, 1981.

John K. Brendel, Brendel, Flanagan, Sendik & Fahl, Wauwatosa, Wis., for plaintiff-appellant, cross-appellee.

Thomas L. Shriner, Jr., Foley & Lardner, Milwaukee, Wis., for defendant-appellee, cross-appellant.

Before SPRECHER, BAUER, and WOOD, Circuit Judges.

BAUER, Circuit Judge.

Plaintiff Edgar Landess operates a milk hauling business in Wisconsin. From September 1976 until February 1980, Landess' business consisted of collecting milk from a number of dairy farms and delivering it to Borden's West Allis, Wisconsin dairy. Landess did not have written contracts with the farmers or with Borden. On February 1, 1980, Borden informed Landess that it would no longer accept milk hauled by him. Borden also notified the farmers that Borden was no longer accepting milk hauled by Landess and that Borden had arranged for different haulers to collect the farmers' milk if they wished to continue to sell to Borden. After February 1, 1980, all of the farmers ceased using Landess' haulage service.

Landess sued Borden in the Wisconsin Circuit Court alleging that Borden tortiously interfered with Landess' present and future contracts with the farmers. The case was removed to the United States District Court for the Eastern District of Wisconsin on Borden's petition,[1] whereupon plaintiff amended the complaint to add a breach of contract count. Borden moved for summary judgment on both counts. In an unpublished opinion and order entered January 30, 1981, the district court granted Borden summary judgment on the breach of contract count and partial summary judgment with respect to the tortious interference claim.[2] Upon plaintiff's concession that he could prove no damages arising from the portion of the interference claim remaining to be tried, the district court entered judgment in Borden's favor. Landess appeals. For the reasons stated in this opinion, we affirm.

I

Landess claims that Borden tortiously interfered with his contracts with the farmers by notifying them of Borden's decision not to use Landess' haulage service after February 1, 1980, and by arranging for other haulage services to deliver the farmers' milk to Borden's dairy. Landess admits that he and the farmers never reduced their agreements to writing. Rather, he contends that his course of dealings with the farmers proves the existence of implied contracts.

For three and one-half years, Landess picked up the farmers' milk every day and delivered it to Borden. In accordance with the customs of the trade, the farmers did not pay Landess directly. He received his payment for the haulage services from Borden, which deducted a portion of the haulage cost from its payments to the farmers for their milk. Viewing this evidence in the light most favorable to Landess, we find that it is sufficient to establish the existence of implied contracts between Landess and the farmers. See *National Oil Co. v. Phillips Petroleum Co.*, 265 F.Supp. 320 (E.D.Wisc.1966). Landess agreed to deliver

---

1. Landess is a resident and citizen of Wisconsin. Borden is incorporated in Delaware and has its principal place of business in Ohio. Pursuant to 28 U.S.C. § 1441(a), Borden petitioned the district court for removal. Because the district court had original jurisdiction of this diversity cause pursuant to 28 U.S.C. § 1332, the court granted Borden's petition.

2. Landess claims that the district court erred in applying the standards set forth in rule 56, Fed.R.Civ.P., rather than Wisconsin law, in determining whether summary judgment was appropriate. "[T]he standards for deciding whether summary judgment was appropriate are a matter of federal law." *Fitzsimmons v. Best*, 528 F.2d 692, 694 (7th Cir. 1976). The district court did not err in applying rule 56.

their milk to Borden and they agreed to pay him for this service.

Landess admits that he and the farmers never agreed on any length of time for the contracts. The implied contracts, then, were for an indefinite duration. Contracts for an indefinite duration are terminable at will, *Forrer v. Sears, Roebuck & Co.,* 36 Wis.2d 388, 393, 153 N.W.2d 587, 589 (1967), or they are void for failing to comply with the statute of frauds requirement that contracts that cannot be completely performed within one year must be reduced to writing. Wis.Stat. § 241.02. Presumably, Landess does not wish us to construe the contracts as void; we assume that they are terminable at will.

Wisconsin, unlike many states, recognizes a tort of inducing termination of a contract terminable at will. *Mendelson v. Blatz Brewing Co.,* 9 Wis.2d 487, 101 N.W.2d 805 (1960). By notifying the farmers that it would no longer accept milk delivered by Landess and by making other haulage services available, Borden did induce the farmers to terminate their contracts with Landess. According to Wisconsin law, which follows the Restatement of Torts §§ 766 & 767 on tortious interference of contracts,[3] Borden is liable for any harm caused by its interference unless its conduct was privileged.[4] Factors to be considered in determining whether Borden's conduct was privileged include (a) the nature of Borden's conduct; (b) the nature of Landess' expectancy; (c) the relationships between the farmers, Landess, and Borden; (d) the interest Borden sought to advance; and (e) the social interest in protecting Landess' expectancy and in protecting Borden's freedom of action. Restatement of Torts § 767.

(a) *Nature of Borden's Conduct:* Under Wisconsin law, an individual inducing a third party to terminate a contract is liable for tortious interference only if he uses improper means, *i.e.,* physical force or fraudulent misrepresentation, to induce termination. *Pure Milk Products Corp. v. National Farmers Org.,* 64 Wis.2d 241, 260, 219 N.W.2d 564, 575 (1974). In this case, Borden's conduct was not improper. Borden merely notified the farmers of its decision to stop accepting milk delivered by Landess and offered the farmers other haulage services if they desired to continue selling their milk to Borden.

(b) *Nature of Landess' Expectancy:* Wisconsin allows recovery for tortious interference with a terminable at will contract on the presumption that the contract "is a subsisting relation, of value to the plaintiff, and presumably to continue in effect." *Mendelson v. Blatz Brewing Co.,* 9 Wis.2d at 491, 101 N.W.2d at 807, *quoting* Prosser, Torts (2d ed.) at 726. If the facts of a particular case do not give rise to a presumption that the contract will continue, there can be no tortious interference. *National Oil Co. v. Phillips Petroleum Co.,* 265 F.Supp. 320, 326 (E.D.Wisc.1966). Where the contract at issue depends for its vitality on the continuance of a separate contract between the plaintiff and a third party, the presumption that the terminable at will contract will continue is rebutted upon proof that the other contract has been terminated. In such a situation, the terminable at will contract is "revolutionized." *Na-*

---

**3.** The Wisconsin Supreme Court has adopted §§ 766 & 767 of the Restatement of Torts. *Pure Milk Products Corp. v. Nat'l Farmers Org.,* 64 Wis.2d 241, 291 N.W.2d 564 (1974); *Mendelson v. Blatz Brewing Co.,* 9 Wis.2d 487, 101 N.W.2d 805 (1960). Plaintiff and defendant argue that we should apply the Restatement (Second) of Torts provisions on tortious interference. While it is true that the Wisconsin Court of Appeals has adopted the Second Restatement, *Liebe v. City Finance Co.,* 98 Wis.2d 10, 295 N.W.2d 16 (Ct. of App.1980), the state supreme court has not. Until the

highest state court adopts the Restatement (Second), we are not at liberty to do so on its behalf.

**4.** Section 766 provides, in pertinent part, that

one who, without a privilege to do so, induces or otherwise purposely causes a third person not to

(a) perform a contract with another, or

(b) enter into or continue a business relation with another

is liable to the other for the harm caused thereby.

*tional Oil Co. v. Phillips Petroleum Co.*, 265 F.Supp. at 326–27. The implied contract between Landess and the farmers depended on Borden's willingness to accept Landess' services for its continued vitality. Therefore, Borden's decision of February 1, 1980, to cease using Landess' haulage service "revolutionized" the contracts between Landess and the farmers. Under these circumstances, Landess had no protectible expectancy that the terminable at will contracts would continue indefinitely.

(c) *Relationships Between Borden, Landess, and the Farmers*: The contractual relations between these three principals are intertwined. The farmers had an agreement with Landess who agreed to haul their milk and an equally valuable arrangement with Borden which agreed to purchase that milk. Similarly, Landess had the agreement with the farmers and an arrangement with Borden whereby Borden agreed to pay a portion of Landess' haulage fees. The vitality of Landess' relation with the farmers depended on the continuation of Landess' agreement with Borden and on the continuation of Borden's agreement with the farmers.

(d) *The Interest Borden Sought to Advance*: By notifying the farmers of Borden's termination of Landess' services and of the availability of a replacement haulage service, Borden sought to encourage the farmers to continue delivering their milk to Borden. Borden had a legitimate interest in continuing its business arrangement with the farmers.

(e) *The Social Interests*: Reasonable men may differ about the appropriate balancing of social interests between protecting Lan-

dess' expectancy that his contracts with the farmers would continue and protecting Borden's freedom to deal with those with whom it chooses, but we believe that the social interest in preserving free competition ought to prevail. If Borden was dissatisfied with Landess' services, free market principles dictate that it should be permitted to terminate plaintiff's services while attempting to preserve its other valuable business arrangement with the farmers.

After careful review of the factors set forth in § 767, we agree with the district court that Borden was entitled to judgment as a matter of law on Landess' tortious interference claim.[5] While it is true that Borden induced the farmers to terminate their contracts with Landess, we believe that Borden's conduct was privileged.[6]

## II

The second count of Landess' amended complaint sets forth a breach of contract claim. Landess argues that he and Borden had an implied contract for an unspecified duration which Borden breached by terminating its use of Landess' haulage services. Alternatively, Landess argues that he is entitled to relief pursuant to the doctrine of promissory estoppel.

■ Landess contends that his three and one-half year course of dealings with Borden created an implied contract. Even if we assume that there was an implied contract, it must have been terminable at will since Borden and Landess never agreed to a termination date. *Forrer v. Sears, Roebuck & Co.*, 36 Wis.2d 388, 153 N.W.2d 587 (1967). Borden clearly did not breach a terminable

---

5. Landess also claims that Borden interfered with his future contractual relations with the farmers. Because tortious interference with future contracts is also governed by §§ 766 & 767, we need not discuss this issue separately. Borden is entitled to judgment on this claim as well for the reasons stated in subsection I of this opinion.

6. If we were to assume, as both parties request, that the Wisconsin Supreme Court will adopt the Restatement (Second) of Torts, we would

still conclude that Borden was privileged to interfere with the contracts between the farmers and Landess. Section 772 of the Restatement (Second) creates a privilege for one who merely transmits truthful information to the terminating third party. *Liebe v. City Finance Co.*, 98 Wis.2d 10, 295 N.W.2d 16 (Ct. of App. 1980). The information Borden provided to the farmers on February 1, 1980, was truthful, and thus its conduct would be privileged.

at will contract by exercising its right to terminate.[7]

 In the alternative, appellant claims that he reasonably relied to his detriment on Borden's promise to use his haulage service and therefore Borden is estopped from terminating. In order to prevail on a promissory estoppel claim, appellant must prove that Borden made some promise on which it reasonably should have expected Landess to rely and that he did act on the promise. *Hoffman v. Red Owl Stores*, 26 Wis.2d 683, 698, 133 N.W.2d 267, 275 (1965). Landess claims that Borden promised to use his haulage service in perpetuity and that in reliance on that promise he purchased a new hauling truck.

 Landess has failed to show that Borden made any promise to continue using his service forever. Landess concedes that the only agreement between the two parties must be implied from their conduct. Nothing in Borden's continued use of Landess' services for three years indicates that Borden promised to bind itself to accept Landess' services in perpetuity.

Moreover, even if we assume—which we do not—that Borden made such a promise, Landess did not purchase the new truck in reliance on that promise. Landess admits that he and Borden agreed to a $.02 per hundred weight increase in his haulage fee if he purchased the truck. Borden fulfilled that agreement by increasing its payments to Landess. Landess' decision to purchase a new truck was an independent business judgment for which he received all that he had bargained.

The undisputed facts before the district court demonstrate that Borden is entitled to summary judgment on Landess' claim of breach of contract. Borden did not breach any implied contract with Landess nor did it promise to accept his services in perpetuity and thereby estop itself from terminating its relationship with Landess. Accordingly, the judgment from which Landess appeals[8] is

Affirmed.

---

7. Plaintiff claims that Borden breached the implied contract by failing to give reasonable notice of termination. *California Wine Assoc. v. Wisconsin Liquor Co.*, 20 Wis.2d 110, 121 N.W.2d 308 (1963). Landess relied exclusively on two theories in the district court in support of his breach of contract claim: (1) breach of an implied contract by termination at any time and (2) promissory estoppel. Breach of contract by failure to give required reasonable notice of termination was not pleaded and tried in the district court and thus is not properly be-

fore us. *Country Fairways, Inc. v. Mottaz*, 539 F.2d 637, 642 (7th Cir. 1976).

8. Borden cross-appealed from the district court order relieving Landess from his waiver of jury trial. Because we affirm the district court grant of summary judgment on both counts of Landess' complaint, Borden's appeal from the district court's prejudgment order is moot. Therefore, cross-appeal number 81–1464 is dismissed.