James N. BARBIAN and Joan L. Barbian, his wife,
Plaintiffs-Appellants-Petitioners,

v.

LINDNER BROS. TRUCKING COMPANY, INC.,
Defendant-Respondent.

Supreme Court

*No. 80–1040. Argued February 2, 1982.—Decided March 2, 1982.*

(Also reported in 316 N.W.2d 371.)

For the plaintiffs-petitioners there was a brief by *Hugh R. Braun* and *Godfrey & Trump* of Milwaukee, and oral argument by *Mr. Braun.*

For the defendant-respondent there was a brief by *Truman Q. McNulty* and *Kluwin, Dunphy, Hankin & McNulty* of Milwaukee, and oral argument by *Truman Q. McNulty.*

DAY, J.   This is a review of a decision of the court of appeals which vacated an order of the circuit court for Milwaukee county, Hon. Louis J. Ceci, Judge, dismissing the complaint of plaintiffs-appellants-petitioners, James N. Barbian and Joan L. Barbian (hereinafter Barbians) on the ground of *res judicata.* The court of appeals remanded the matter to the trial court with orders that summary judgment be entered in favor of defendant-respondent, Lindner Bros. Trucking Co., Inc. (hereinafter Lindner).

The issue in this case is whether the judgment dismissing an earlier declaratory judgment action brought by the Barbians against Lindner, two affiliates of Lindner, and the city of Milwaukee, is *res judicata* as to the current action, which alleges that Lindner's use of a driveway adjacent to the Barbians' home as access to a warehouse constitutes a nuisance, entitling the Barbians to an injunction prohibiting such use and damages.

We hold that the earlier judgment, which held that certain rezoning of land by the city of Milwaukee was constitutional and that the doctrine of laches precluded the Barbians from obtaining an injunction against Lindner, is *res judicata* as to the Barbians' claim for an injunction but does not bar the Barbians' claim for damages.

We therefore affirm that part of the court of appeals decision vacating the order of dismissal and remanding

to the trial court. We reverse that part of the court of appeals decision ordering entry of summary judgment for the defendant Lindner. We remand the matter to the trial court for a trial on the merits of the damage claim and with instructions to dismiss Barbians' request for an injunction.

The Barbians live on the west side of South Sixth Street in Milwaukee. The land behind their house and a lot next to it are zoned industrial. The land along Sixth Street on which their house is located is zoned residential except for the aforementioned next door lot. In 1974, Advanced Transportation Company, an affiliate of Lindner, purchased a plot of industrial zoned land adjacent to, and south and west of, the Barbians' land for the purpose of constructing a warehouse. That plot had no access to a public road save by a private driveway which ran through the lot next to the Barbian home. This lot, which was also purchased by Lindner, was zoned residential at the time of the purchase.

In 1976, Lindner constructed a 100,000 square-foot warehouse on the land behind the Barbian residence. The Barbians complained to the city of Milwaukee building inspector about the noise and dirt generated by the increased number of vehicles using the driveway next to their house. The building inspector's office ordered the construction halted because the use of the lot next to the Barbians to gain access to the warehouse was an impermissible use of a residentially zoned lot. This order was subsequently reversed, and the city building inspector ruled that the driveway constituted a "legal nonconforming use" of the residential lot.

In 1976, the Barbians commenced an action against Lindner to enjoin it from using the residentially zoned lot for access to the warehouse. In March, 1977, the Barbians commenced another action seeking damages

from Lindner resulting from the use of the driveway. On July 11, 1977, the city of Milwaukee rezoned the lot containing the driveway from residential to industrial, which permitted access to the warehouse. Only July 27, 1977, the Barbians commenced a declaratory judgment action against the city of Milwaukee and Lindner. The two earlier actions were consolidated with the declaratory judgment claim. The action sought a declaration that the zoning change was illegal and void, and that the Barbians were entitled to both an injunction prohibiting Lindner from using the driveway and damages.

A trial was held before Milwaukee County Circuit Judge William R. Moser. Judge Moser granted judgment for the defendants, holding that the zoning change was within the city's powers and that the request for an injunction was barred by laches. The Barbians appealed the case to the court of appeals which upheld the trial court decision. This Court declined to review the Court of Appeals decision.

On December 7, 1979, the Barbians commenced a new action against Lindner seeking damages and an injunction to prevent Lindner from using the driveway. Lindner moved that the action be dismissed on the ground that the earlier judgment was *res judicata* as to the present action. This motion was granted by Milwaukee County Circuit Judge Louis J. Ceci on January 28, 1980. The Barbians moved for reconsideration of the decision and, on May 5, 1980, Judge Ceci reaffirmed his earlier order. The court of appeals, in a decision dated March 24, 1981, upheld the trial court's conclusion that the earlier case was *res judicata* but vacated the order dismissing the Barbians' complaint and remanded the case directing that judgment be entered on behalf of Lindner. The Barbians petitioned this court to review the court of appeals decision which was granted.

The earlier action, which the courts below determined was *res judicata* as to the current action, named Lindner, two affiliates of Lindner, and the city of Milwaukee as defendants. The portions of the earlier complaint which alleged a cause of action against Lindner were as follows:

". . . 8. That to gain access to the property, Lindner Bros. Trucking Co., Inc. constructed an asphalt driveway from the terminal to South Sixth Street, crossing the residentially zoned land approximately 15 feet from the north wall of the plaintiffs' residence. That 30 to 40 semi-trailer trucks use the driveway each day and substantially impair the usability of the plaintiffs' property. That at the time Advance, Lindner and J & L Terminals purchased the land and constructed the warehouse and access road, they knew or should have known that access to the warehouse could not be legally obtained across the residentially zoned land north of the plaintiffs' property. . . .

"WHEREFORE, the petitioners pray for a declaration of their rights and for judgment pursuant to the provisions of sec. 806.04 determining: . . .

"AS TO ADVANCE, LINDNER AND J & L TERMINALS:

"B. That the plaintiffs are entitled to an injunction restraining the defendants, Advance, Lindner and J & L Terminals, from using land north of their property as access to the industrial land to the west.

"C. That the plaintiffs are entitled to recover damages from the defendants, Advance, Lindner and J & L Terminals, as a result of the illegal use of the residential land north of their property since June 1, 1976.

"D. That the plaintiffs are entitled to costs and disbursements of the action."

The action did not ask directly for an injunction or damage award, but sought a declaration of rights and judgment that the Barbians were entitled to such relief pursuant to the declaratory judgment statute, sec. 806.04,

Stats. 1977.¹ Because the complaint was dismissed on its merits the question of supplemental relief under sec. 806.04(8) never became an issue.

■

In order for the first action to bar the current action under the doctrine of *res judicata*, there must be an identity of parties and an identity of causes of action in the two cases. *Leimert v. McCann*, 79 Wis. 2d 289, 294, 255 N.W.2d 526 (1977). Both the Barbians and Lindner are parties to both actions. The issue is whether the causes of action are identical.

■

Generally, an earlier judgment is *res judicata* as to all matters which were or might have been litigated in that proceeding. *Leimert*, 79 Wis. 2d at 293–94. However, the Restatement of Judgments, sec. 77, comment *b* (1942), states that the general rule does not apply to declaratory judgments:

"*b. Effect of declaratory judgment on subsequent controversies.* The effect of a declaratory judgment in subsequent controversies between the parties depends

---

¹ The portions of sec. 806.04, Stats., which are pertinent to this discussion are sec. 806.04(1) and (8):

"806.04 **Declaratory judgments.** (1) Scope. Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree. . . .

"(8) Supplemental relief. Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith."

upon the scope of the declaration of rights made by the judgment. *As to matters not declared by the judgment, although a declaration might have been made as to them, the parties are not so precluded.*

"Where a plaintiff seeks a declaratory judgment, he is not seeking to enforce a claim against the defendant. He is seeking rather a judicial declaration as to the existence and effect of a relation between him and the defendant. The effect of the judgment, therefore, unlike a judgment for the payment of money, is not to merge a cause of action in the judgment or to bar it. The effect of a declaratory judgment is rather to make res judicata the matters declared by the judgment, thus precluding the parties to the litigation from relitigating these matters." (Emphasis added.)

*Accord: Atchison v. City of Englewood,* 180 Colo. 407, 506 P.2d 140, 143 (1973); *In re Ditz' Estate,* 255 Iowa 1272, 125 N.W.2d 814, 821 (1964); *North Shore Realty Corporation v. Gallaher,* 99 So. 2d 255, 257 (Fla. App. 1957). *See generally,* 22 Am. Jur. 2d, *Declaratory Judgments,* sec. 102 (1965); Annot., 10 A.L.R.2d 782, 787 (1950). We agree with the rule, as set forth in the Restatement, that a declaratory judgment is only binding as to matters which were actually decided therein and is not binding to matters which "might have been litigated" in the proceeding.

In the declaratory judgment action, Judge Moser rendered an oral decision granting judgment for the city of Milwaukee and Lindner and dismissing the Barbians' complaint on the merits.[2] The primary focus of that decision

---

[2] Rather than granting a judgment dismissing the Barbians' declaratory judgment action, this Court has held that the preferred procedure is for the trial court to make a declaratory adjudication in favor of defendants. *Just v. Marinette County,* 56 Wis. 2d 7, 24, 201 N.W.2d 761 (1972); *Iowa Nat. Mut. Ins. Co. v. Liberty Mut. Ins. Co.,* 43 Wis. 2d 280, 285, 168 N.W.2d 610 (1969); *City of Milwaukee v. Milwaukee County,* 27 Wis. 2d 53, 67, 133 N.W.2d 393 (1965).

was on the legality of the zoning change, which the trial court upheld. It then held that the doctrine of laches precluded enjoining Lindner from using the road. This latter holding was based upon a finding that the driveway had been continually used by Lindner's predecessor in title since 1957 without complaint by the Barbians, and that it would be inequitable to enjoin Lindner from using the driveway after he had constructed the warehouse, which only had access to a street by way of the driveway.

The holdings that the rezoning was valid and that injunctive relief was barred by laches were reiterated in the findings of fact and conclusions of law. Judge Moser also signed an order that the defendants have judgment dismissing the Barbians' complaint on its merits. A judgment dismissing the complaint against the city of Milwaukee was entered in the Milwaukee county clerk of court's office but no judgment dismissing the complaint on behalf of Lindner was ever entered.

The Barbians argue that Lindner's failure to enter the judgment against them precludes any *res judicata* effect of the judgment on the current action. We disagree. The Barbians do not dispute that Judge Moser orally ruled that, based upon the doctrine of laches, Lindner was entitled to judgment dismissing their claim for a declaration that they were entitled to an injunction. Nor do they deny that the trial court issued an order that Lindner was entitled to a judgment dismissing the complaint on its merits.

In the early case of *Comstock v. Boyle,* 134 Wis. 613, 617, 114 N.W. 1110 (1908), this court declared:

"The principle is also well settled in this state that if the court pronounces judgment from the bench, and all that remains to be done is the clerical duty of reducing the judgment to writing or entering the same, or both, the judicial act is complete. So far as the court is con-

cerned, judgment has been rendered notwithstanding the fact that the clerical acts necessary to preserve the evidence of the judgment have not been performed."

*See also, Estate of O'Brien,* 273 Wis. 223, 226, 77 N.W. 2d 609 (1956) ; *Zbikowski v. Straz,* 236 Wis. 161, 164–65, 294 N.W. 541 (1940) ; *State ex rel. Wingenter v. Circuit Court,* 211 Wis. 561, 564, 248 N.W. 413 (1933). We hold that the judgment granted from the bench followed by the order for judgment signed by the court on July 31, 1978, and filed the same day is *res judicata* as to the matters decided therein notwithstanding that a separate "judgment" was not entered on behalf of Lindner.

The present action alleges the following grounds as entitling the Barbians to relief against Lindner:

"5. That the noise, the dirt and the appearance of such trucks and the danger they create for those residing in the plaintiffs' home significantly impair the usability of their home and constitute a nuisance which has been continually maintained by the defendant since at least the time when the warehouse was fully opened for business.

"6. That the noise generated by trucks passing over the access route north of the plaintiffs' home is in violation of the noise ordinance of the City of Milwaukee and constitutes a nuisance; that demands have been made upon the City of Milwaukee for enforcement of its ordinance, but no action has been taken by it.

"7. That the plaintiffs have continually complained regarding the use of this access route and have pressed their objections since March of 1978, when the Honorable William R. Moser, in a trial regarding the zoning of the area north of the plaintiffs' home, warned the defendant that it must correct its continued violation of the noise ordinance of the City of Milwaukee.

"8. That the maintenance of the nuisance by the defendant and the continuing violation of the noise ordinance of the City of Milwaukee has been willful, deliberate and malicious.

"WHEREFORE, the plaintiffs pray for judgment restraining the continued maintenance of the nuisance and the continued violation of the noise ordinance of the City

of Milwaukee, for compensatory damages in the amount of $250,000.00, for punitive damages in the amount of $1,000,000."

The current action is based on common law nuisance and nuisance based upon a violation of the Milwaukee county noise ordinance. In the record there is a letter from George A. Kupfer, a superintendent in the city of Milwaukee health department, which states that it would grant Lindner a permanent variance from the noise ordinance if Lindner complied with certain conditions. There is nothing in the record to establish whether those conditions were complied with and whether the variance was in fact issued. The parties have not briefed or argued whether a valid variance exists and what effect the variance has on the Barbians' action for damages.[3] We therefore leave the resolution of this issue to the trial of the case.

The judgment granted in the earlier action declared that the Barbians were not entitled to an injunction because of laches. This court held in *McKinnon v. Benedict*, 38 Wis. 2d 607, 616–617, 157 N.W.2d 665 (1968), that an injunction against maintaining a nuisance should not be granted where "the inconveniences and hardships caused outweigh the benefits." This process of balancing the comparative injuries is not applicable to a nuisance action where damages, rather than an injunction is sought. *Jost v. Dairyland Power Cooperative*, 45 Wis. 2d 164, 174–77, 172 N.W.2d 647 (1969). The decision in the earlier action to deny the injunction was based upon the Barbians' failure to assert their nuisance claim, despite

---

[3] Counsel for Lindner asserted that Lindner had obtained a permanent variance and that this made the Barbians' action moot. He offered nothing in support of these arguments and cited no authority in support of them. We therefore do not decide these issues.

the long-term existence of the driveway, until after Lindner had constructed the warehouse. Refusing an injunction because of laches was appropriate under the doctrine set forth by this court in *Diehl v. Dunn,* 13 Wis. 2d 280, 286, 108 N.W.2d 519 (1961).[4]

"Injunction is an equitable remedy, and a court in accordance with ancient doctrines and established decisions will lend its aid only to the vigilant, active, and faithful. Unreasonable delay, lapse of time, coupled with injury or prejudice, independently of any statute of limitations, constitute a defense in a court of equity."

The oral decision rendered by Judge Moser in the earlier action held that the doctrine of laches precluded a declaration that the Barbians were entitled to an injunction forbidding Lindner from using the driveway. The conclusions of law signed by the trial court also explicitly stated that an injunction was barred by laches. The court of appeals decision on the earlier action also discussed the doctrine of laches and held that it barred plaintiffs from obtaining an injunction. We conclude that the issue of whether the Barbians are entitled to an injunction was actually adjudicated in the earlier action and that that judgment bars their present claim for an injunction under the doctrine of *res judicata.*

The Barbians argue that if the driveway is held to be a continuing, rather than permanent nuisance, the earlier judgment does not bar their action insofar as it relates to the period after the entry of the earlier judgment. This position is without merit because the earlier refusal

---

[4] *Cf., Durand v. Board of Coop. Ed. Services,* 70 Misc. 2d 429, 334 N.Y.S.2d 670 (1972), *affd,* 41 App. Div. 2d 803, 341 N.Y.S.2d 884 (1973), where a claim for an injunction was denied on the basis of laches where the defendants had spent over $122,000 to construct the facility which was claimed to be a nuisance before the plaintiffs commenced their action.

to grant the injunction was based upon laches, or the Barbians' delay in making their complaint.

However, the findings of fact and conclusions of law filed in the initial action made no mention of the Barbians' claim for damages. Neither did Judge Moser's oral decision nor the court of appeals decision in the earlier action. In fact, at the conclusion of his oral decision, Judge Moser stated the following as to whether the Barbians were damaged by the trucks using the driveway:

"The decibels of sound are from 75 to 85 on the trucks that are continuously using this road; and the Ordinance clearly says the decibel level can't be above 55. That's a violation of the ordinance. I would move this road quickly. I would set up some kind of buffers quickly, so that the noise levels of Mr. Barbian's house, which is eight feet from this lot line and I think eighteen feet from the road, cease; because, I can tell you this, that, if Judge Moser lived there, everyday a complaint would be filed with the City; and I would demand a hearing on every complaint every day, and I would harass the City every day for these noise levels. Nobody has the right to use a vehicle that has a higher decibel count in this community that goes beyond 55. In counsel's own argument to this Court, was that his trucks or his client's trucks only use 75 to 85; that's 25 to 35 decibel levels over that allowed by the Ordinance; and it better stop, because if I were Mr. Barbian I would be out there everyday with a meter, and I would be calling up my Alderman every day, I would be calling the City Hall every day, and I would just harass these guys until they are out of business; because they have no right to harass me in this way if I lived in that house next door to that roadway, and that is continuous daily harassment by these Defendants. Thank you Gentlemen. The Court stands in recess."

The comments by the judge make clear that, while the decision held that the Barbians were not entitled to an injunction, Judge Moser did not intend that it foreclose the Barbians from obtaining relief by way of damages

from Lindner. There is no other evidence in the record to show that the extent or amount of damages suffered by the Barbians was litigated in the earlier action.

We therefore hold that while the earlier judgment is *res judicata* as to the Barbians' claim for an injunction, and that Lindner is entitled to judgment on that claim, it does not bar their claim for damages. Accordingly, we remand this case to the trial court for a trial on the issue of whether the Barbians are entitled to damages under the Wisconsin law of nuisance.

*By the Court.*—The decision of the Court of Appeals is affirmed in part, reversed in part and the cause remanded to the trial court for proceedings not inconsistent with this opinion.