Edgar Landess, Plaintiff-Appellant,

v.

John Schmidt, Larry Nicosen, Howard Gundrum, Janice Gundrum, John W. Hansen, Borden, Inc., and Neal Rosinsky, Defendants-Respondents.

Court of Appeals

*No. 82–2227. Submitted on briefs July 20, 1983.—*
*Decided September 26, 1983.*
(Also reported in 340 N.W.2d 213.)

For the plaintiff-appellant the cause was submitted on the briefs of *Brendel, Flanagan, Sendik & Fahl, S.C.,* with *John K. Brendel* of counsel, of Wauwatosa.

For the defendants-respondents Howard Gundrum, Janice Gundrum and John W. Hansen, the cause was submitted on the briefs of *Bunk, Doherty & Griffin, S.C.,* with *Patrick R. Griffin* of counsel, of West Bend, and *Schloemer, Schlaefer, Alderson, Seefeldt & Spella, S.C.,* with *Thomas G. Dunlop* of counsel, of West Bend.

For defendants-respondents John Schmidt, Larry Nicosen, Borden, Inc. and Neal Rosinsky, the cause was submitted on the briefs of *Foley & Lardner,* with *Thomas L. Shriner, Jr.,* and *David A. Baker* of counsel, of Milwaukee.

Before Wedemeyer, P.J., Decker and Moser, JJ.

WEDEMEYER, P.J.   Edgar Landess (Landess) appeals from a judgment of the trial court granting respondents' motion to dismiss. Landess claims that

neither *res judicata* nor collateral estoppel is applicable to his conspiracy claim under sec. 134.01, Stats. We hold that *res judicata* bars Landess' conspiracy claim against the respondents, Borden, Inc. (Borden) and its employees, John Schmidt, Larry Nicosen and Neal Rosinsky (collectively referred to as "employees"), and that collateral estoppel bars the conspiracy claim against the respondents, Janice Gundrum, Howard Gundrum and John W. Hansen (collectively referred to as "milk haulers"). We, therefore, affirm the judgment of the circuit court.

Landess operates a milk hauling business in Wisconsin. From September, 1976, until February, 1980, Landess' business consisted of collecting milk from a number of dairy farms and delivering it to Borden's West Allis dairy. Landess did not have written contracts with the farmers or Borden. On February 1, 1980, Borden informed Landess that it would no longer accept milk hauled by him. Borden also notified the farmers that Borden was no longer accepting milk hauled by Landess and that Borden had arranged for different haulers to collect the farmers' milk if they wished to continue to sell to Borden. After February 1, 1980, all of the farmers ceased using Landess' hauling service.

Landess sued Borden in Wisconsin Circuit Court, claiming that Borden had tortiously interfered with his business relations. Borden removed the case to federal district court. Landess amended the complaint to additionally allege that Borden had breached an implied contract with him when it refused to accept milk hauled by him from Borden's producers. The district court granted Borden summary judgment, dismissing the claims. The Seventh Circuit affirmed. *Landess v. Borden, Inc.*, 667 F.2d 628 (7th Cir. 1981).

On February 1, 1982, Landess filed the present claim against Borden, the employees and the milk haulers.

Landess contends that Borden, the employees and the milk haulers conspired to injure his reputation and business in violation of sec. 134.01, Stats. Borden and the employees moved to dismiss the complaint claiming that *res judicata* barred the claim. The milk haulers also moved to dismiss the complaint claiming that Landess is collaterally estopped from bringing this action against them by virtue of the judgment entered in the federal district court. In a memorandum decision entered October 14, 1982, the trial court granted both motions and dismissed the complaint. Judgment was entered October 27, 1982, from which Landess appeals.

Landess raises two issues on appeal:

(1) whether *res judicata* bars Landess' conspiracy claim, under sec. 134.01, Stats., against Borden, its employees, or the milk haulers;[1] and
(2) whether collateral estoppel bars Landess' conspiracy claim against Borden, its employees, or the milk haulers.

## RES JUDICATA

We shall separately address the applicability of *res judicata* as to each respondent.

The doctrine of *res judicata* makes a final adjudication conclusive in a subsequent action between the same parties, or their privies, as to all matters which (1) were litigated or (2) might have been litigated in the former proceeding. *DePratt v. West Bend Mutual Insurance Co.,* 113 Wis. 2d 306, 310, 334 N.W.2d 883, 885 (1983). *Accord Barbian v. Lindner Brothers Trucking Co.,* 106 Wis. 2d 291, 296, 316 N.W.2d 371, 374 (1982) ; *Leimert*

---

[1] While the milk haulers only moved to dismiss on the ground of collateral estoppel, the trial court ruled that Landess' claim against them was also barred by *res judicata*.

*v. McCann*, 79 Wis. 2d 289, 293–94, 255 N.W.2d 526, 528–29 (1977).

When determining whether *res judicata* applies, we are presented with a question of law. *DePratt, supra.* As to questions of law, an appellate court need not give special deference to determinations of a trial court. *Id.*

A valid and final judgment on the merits in favor of the defendant bars another action by the plaintiff against the defendant on the same claim or cause of action. *Id.* A summary judgment in favor of the defendant is sufficient to meet the requirement of a conclusive and final judgment. *Id.* at 310–11, 334 N.W.2d at 885. The purpose of *res judicata* is to prevent repetitive litigation. *Id.* Fairness to the defendant and sound judicial administration require that at some point litigation over the particular controversy must come to an end. *Id.*

*Res judicata* requires that, for the prior action to bar the current action, there must be an identity of parties and an identity of causes of action or claims in the two cases. *Id.* In the current action against Borden, there is an identity of parties. We must determine, however, whether there exists an identity of causes of action or claims.

## Identity of Causes of Action or Claims

Landess argues that the test of whether there is more than one cause of action is whether there is more than one primary right sought to be enforced. He contends that in the first action he attempted to enforce contractual rights, but that the instant action involves the separate and distinct right not to have two or more persons conspire to destroy one's business. We disagree.

In *DePratt* the supreme court adopted the "transactional view" of a claim or a cause of action. *Id.* at 311–12, 334 N.W.2d at 885–86. The supreme court quoted comment a to § 24 of the Restatement (Second) of Judgments:

The present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; *regardless of the number of primary rights that may have been invaded;* and regardless of the variations in the evidence needed to support the theories or rights. The transaction is the basis of the litigative unit or entity which may not be split. *Id.* at 311, 334 N.W.2d at 885–86. [Emphasis added; footnote omitted.]

A plaintiff's claim is barred although he or she is prepared in the second action: (1) to present evidence or grounds or theories of the case not presented in the first action; or, (2) to seek remedies or forms of relief not demanded in the first action. *Id.* at 312, 334 N.W.2d at 886. The Restatement (Second) of Judgments, § 24, states:

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations *as whether the facts are related in time, space, origin,* or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. [Emphasis added.]

Here the facts in both actions are closely related in time, space and origin. Each alleged injury occurred on February 1, 1980. The contractual interference and breach of contract occurred at the same time that the conspiracy may have occurred. In the prior action, all parties did business in their restricted geographic areas in Wisconsin. In the present action, all parties did business in the same restricted areas of Wisconsin, and the alleged conspiracy involved those areas. The injury occurred at the same place. The tort, breach of contract and conspiracy claims allegedly had the same origin between Borden and the milk haulers. We conclude that the tort, breach of contract and conspiracy claims stem from the same transaction; therefore, the claims are identical.

Landess originally brought the contractual interference and breach of contract claims in a state trial court. Had Landess alleged a conspiracy claim before Borden removed the case to district court, the state trial court could have obtained jurisdiction over the conspiracy claim. Therefore, the state trial court could have litigated the conspiracy claim.

Landess argues that *res judicata* is inapplicable to his claim against Borden because the district court in the prior action could not have obtained jurisdiction over the conspiracy claim. We disagree.

Landess reasons that the milk haulers are Wisconsin citizens. Consequently, there would have been a lack of total diversity had Landess alleged a conspiracy and joined the milk haulers as defendants in the first action in district court. In *Schultz v. Frankfort Marine, Accident & Plate Glass Insurance Co.*, 151 Wis. 537, 539, 139 N.W. 386, 387–88 (1913), the plaintiff charged several defendants with violating sec. 134.01, Stats. (then sec.

4466(a)). The defendants argued that since several alleged conspirators were not named as defendants, the plaintiff could not complain of unlawful actions committed by the named defendants. *Id.* at 546–47, 139 N.W. at 390. The supreme court rejected the defendants' argument, reasoning that the liability of conspirators is joint and several. *Id.* at 547, 139 N.W. at 390. If the plaintiff demonstrates a *prima facie* conspiracy, the plaintiff may introduce evidence of the acts and statements of any conspirator done or said in furtherance of the common purpose, even if that conspirator is not a party defendant. *Id.; see also Michels v. Michels,* 240 Wis. 539, 545, 3 N.W.2d 359, 361 (1942); *Burton v. Dixon,* 131 S.E.2d 27, 30 (N.C. 1963); *Burns v. Gulf Oil Corp.,* 98 S.E.2d 339, 344 (N.C. 1957); *Lyle v. Haskins,* 168 P.2d 797, 807 (Wash, 1946); *Hanover Fire Insurance Co. v. Furkas,* 255 N.W. 381, 383 (Mich. 1934).

*Schultz* demonstrates that Landess was not required to join the milk haulers as defendants in the first action to prove a conspiracy in violation of sec. 134.01, Stats. Although that statute requires a conspiracy of two or more persons, it does not require that two or more persons be *named as defendants.* Accordingly, the district court could have obtained jurisdiction of the conspiracy claim because diversity existed between Landess and Borden. *Landess, supra,* at 630 n. 1. Therefore, that claim could have been litigated and determined in the first action. We hold that the doctrine of *res judicata* bars the conspiracy claim against Borden.

The employees of Borden argue that Landess' claim against them is barred by the judgment in Borden's favor, although they were not named as defendants in that prior action. We agree.

■

The employees refer this court to *Vukelic v. Upper Third Street Savings & Loan Association,* 222 Wis. 568, 269 N.W. 273 (1936), as support for their argument. In *Vukelic,* a savings and loan (corporation) brought a mortgage foreclosure action against Vukelic. *Id.* at 570, 269 N.W. at 274. The trial court determined the amount due under the mortgage, and the corporation obtained a favorable judgment. *Id.* at 569–70, 269 N.W. at 274. Vukelic then commenced an action against the corporation and its secretary-treasurer (secretary), claiming that the secretary had paid out a sum of the loan without his order. *Id.* The corporation raised the defense of *res judicata. Id.* The supreme court held that the determination of the amount due under the mortgage also determined that the amount paid out was distributed by Vukelic's order. *Id.* Vukelic sought to avoid the application of *res judicata* by arguing that where the corporation and its secretary were defendants in the second action, the corporation and its secretary could not assert a bar because the secretary was not a defendant in the first action. *Id.* at 274. The supreme court rejected Vukelic's argument, stating:

If the principal's liability is claimed to rest on the tortious act of his agent, and in a former suit the agent's act has been determined not to have been tortious, *the judgment is pleadable as a bar by either in a suit against him, although in the suit in which the judgment was rendered only the other was a party. Id.* at 572, 269 N.W. at 274–75 [emphasis added; citations omitted].

The Restatement (Second) of Judgments § 51 (1982), states:

If two persons have a relationship such that one of them is vicariously responsible for the conduct of the other, and an action is brought by the injured person against one of them, the judgment in the action has the

following preclusive effects against the injured person in a subsequent action against the other.

(1) A judgment against the injured person that bars him from reasserting his claim against the defendant in the first action *extinguishes any claim he has against the other person responsible for the conduct* unless:

(a) The claim asserted in the second action is based upon grounds that could not have been asserted against the defendant in the first action; or

(b) The judgment in the first action was based on a defense that was personal to the defendant in the first action.[2] [Emphasis added.]

Landess alleges in the instant action that the employees are "in the employ of Borden, Inc. . . . ." Landess also alleges that Borden, "per it's [sic] employees," conspired to destroy his business. Since Landess claims that the employees are Borden's "employees," Borden is vicariously responsible for the conduct of those employees. *See Arsand v. City of Franklin,* 83 Wis. 2d 40, 45, 264 N.W.2d 579, 582 (1978); *Maniaci v. Marqette University,* 50 Wis. 2d 287, 302, 184 N.W.2d 168, 176 (1971). The injured person, Landess, is bringing an action against defendants, the employees, who were not named in the prior action. There was, however, a judgment against Landess in the prior tort and breach of contract action. *See Landess, supra,* at 632–33. We have held that the prior judgment bars Landess from reasserting the conspiracy claim against Borden. Therefore, we also hold that the prior judgment against Borden extin-

---

[2] The *Vukelic* rule was originally set forth in similar language in the Restatement of Judgments § 99 (1942). *See* A. Vestal, *Res Judicata/Preclusion* 113 (1969). Section 51 of the Restatement (Second) of Judgments (1982) expresses essentially the same position as in § 99 of the first Restatement. *See* Restatement (Second) of Judgments § 51 reporter's note, at 55 (1982). Therefore, we determine that § 51 is applicable to this appeal.

guishes the conspiracy claim against the employees. *See* Restatement (Second) of Judgments § 51(1) (1982).

The milk haulers, however, are not alleged to be Borden's employees; and, therefore, neither § 51 of the Restatement (Second) of Judgments (1982) nor *Vukelic* is applicable. *Vukelic, supra,* at 572, 269 N.W. at 274–75. Further, the milk haulers were not parties in the prior action. Accordingly, we hold that *res judicata* is inapplicable to Landess' conspiracy action against them. *See DePratt, supra,* at 312–13, 334 N.W.2d at 885–86.

## COLLATERAL ESTOPPEL

The milk haulers argue that collateral estoppel precludes Landess from litigating two issues determined in the prior action. The first issue concerns the district court's finding that, as a matter of law, Borden's refusal to accept milk hauled by Landess was not actionable. *See Landess, supra,* at 632. The second issue involves the determination that since Borden's refusal to continue their relationship was not actionable, Landess could not prove damages. The milk haulers contend that Landess cannot succeed here without attacking these prior determinations. We agree.

The Restatement (Second) of Judgments § 27 (1982) states:

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.[3]

[3] In *Premke v. Pan Am. Motel,* 35 Wis. 2d 258, 270, 151 N.W. 2d 122, 128 (1967), the Wisconsin Supreme Court adopted § 68(1) of the Restatement of Judgments (1942). *Accord Rauser v. Rauser,* 52 Wis. 2d 665, 670, 190 N.W.2d 875, 878 (1971). Because § 27 of the Restatement (Second) of Judgments is almost iden-

A summary judgment is sufficient to meet the "actually litigated and determined" requirement. *Id.* comment d.

Relitigation of previously decided issues is undesirable. Schroeder, *Relitigation of Common Issues: The Failure of Nonparty Preclusion and an Alternative Proposal,* 67 Iowa L. Rev. 917, 918 (1982). The effects of relitigation include the waste or misallocation of judicial resources consumed in reconsidering issues and evidence that had already been presented in the prior action and the spector of inconsistent decisions on identical issues. *Id.* We must not, however, deprive a litigant of an adequate day in court. Restatement (Second) of Judgments § 27 comment c (1982).

In *State ex rel. Flowers v. DHSS,* 81 Wis. 2d 376, 387, 260 N.W.2d 727, 734 (1978), the supreme court stated that collateral estoppel precludes "relitigation of an issue of ultimate fact previously determined by a valid final judgment in an action between the same parties." [Citation omitted.] This doctrine applies "where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and *where the controlling facts and applicable legal rules remain unchanged . . . ." Id.* [Emphasis in original; citation omitted.] The second proceeding must involve "the same bundle of legal principles" that contributed to the disposition of the first proceeding. *Id.*

The supreme court in *Flowers* held that the legal principles applicable in parole revocation proceedings were not as burdensome as those governing the initial criminal action. *Id.* at 388, 260 N.W.2d at 734. The court stated that different burdens of proof applied and that the "paramount considerations" were different. *Id.* at 387, 260 N.W.2d at 734. Consequently, collateral estop-

---

tical to § 68(1) of the Restatement of Judgments, we determine that § 27 is applicable to this appeal.

pel did not apply to the parole revocation hearing. *Id.* at 389, 260 N.W.2d at 735. *Flowers* demonstrates that a substantial difference in applicable legal standards between the first and second actions may render illusory a seeming identity of issues. Ryan, *Collateral Estoppel in the Wisconsin Courts,* 55 Wis. B. Bull. 31, 32 (Jan. 1982).[4]

In the prior action the federal courts litigated and determined Landess' contractual interference and breach of contract claims. *See Landess, supra,* at 630. In the instant conspiracy action Landess sued the milk haulers under sec. 134.01, Stats. This statute states:

Any 2 or more persons who shall combine, associate, agree, mutually undertake or concert together *for the purpose of wilfully or maliciously injuring another in his reputation, trade, business or profession* by any means whatever, . . . shall be punished by imprisonment in the county jail not more than one year or by fine not exceeding $500. [Emphasis added.]

Thus, a defendant's purpose to willfully or maliciously injure a plaintiff is a requirement of civil liability under sec. 134.01. *See Radue v. Dill,* 74 Wis. 2d 239, 245, 246 N.W.2d 507, 511 (1976).

---

[4] We note that Landess was required to meet a different burden of proof in the prior action in federal court than in the current action. Landess, however, was required to meet a *lighter* burden of proof concerning the destructive purpose issue in the prior action than in the current action. *See Wangen v. Ford Motor Co.,* 97 Wis. 2d 260, 299, 294 N.W.2d 437, 457 (1980); *Cox v. Cox,* 259 Wis. 259, 262, 48 N.W.2d 508, 510 (1951). In contrast, in *Flowers,* the party against whom preclusion was sought was required to meet a *heavier* burden of proof in the first action concerning the identical issue. *State ex rel. Flowers v. DHSS,* 81 Wis. 2d 376, 388, 260 N.W.2d 727, 734 (1978). The *Flowers* opinion, therefore, does not preclude the application of collateral estoppel to the present action. *See* Restatement (Second) of Judgments § 28(4) & comment f (1982).

In the prior federal action, on appeal, the Seventh Circuit, applying Wisconsin law, utilized §§ 766–67 of the Restatement of Torts (1939),[5] in reviewing the tortious interference claim. *Landess, supra,* at 631–32.

Comment m to § 766 of the Restatement of Torts (1939), in discussing the tort of contractual interference, states:

Ill will on the part of the actor toward the person harmed is not an essential condition of liability under the rule stated in this Section. He may be liable even when he acts with no desire to harm the other. But the privileges to act in the manner stated in this Section depend largely on the purposes of his conduct. *If the actor does not act for the purpose of advancing the interest for the protection of which the privilege is given, he is not exercising the privilege and is not protected by it.* No privilege is given to protect merely the interest in satisfying one's spite or ill will. The presence or absence of ill will toward the person harmed may clarify the purposes of the actor's conduct and may be, accordingly, an important factor in determining the existence or nonexistence of privilege. [Emphasis added.]

---

[5] Section 766 of the Restatement of Torts (1939), states:

Except as stated in Section 698, one who, without a privilege to do so, induces or otherwise purposely causes a third person not to

(a) perform a contract with another, or

(b) enter into or continue a business relation with another

is liable to the other for the harm caused thereby.

Section 767 of the Restatement of Torts sets forth the factors in determining privilege:

In determining whether there is a privilege to act in the manner stated in § 766, the following are important factors:

(a) the nature of the actor's conduct,

(b) the nature of the expectancy with which his conduct interferes,

(c) the relations between the parties,

(d) the interest sought to be advanced by the actor and

(e) the social interests in protecting the expectancy on the one hand and the actor's freedom of action on the other hand.

The Seventh Circuit, in discussing the interest that Borden sought to advance, stated: "By notifying the farmers of Borden's termination of Landess' services and of the availability of a replacement haulage service, Borden sought to encourage the farmers to continue delivering their milk to Borden. *Borden had a legitimate interest in continuing its business arrangement with the farmers." Landess, supra,* at 632 [emphasis added].

The Seventh Circuit, therefore, held that Borden acted for the purpose of advancing an interest for the protection of which the privilege in § 766 of the Restatement of Torts was given. We conclude that the purpose of Borden's actions was litigated and determined in the prior action. The "actually litigated and determined" element of collateral estoppel is, therefore, satisfied. *See* Restatement (Second) of Judgments § 27 (1982).

The definition of collateral estoppel that we are applying to this appeal also requires that the determination of the issue be "essential to the judgment." *See* Restatement (Second) of Judgments § 27 (1982). Further, comment m to § 766 of the Restatement of Torts (1939) in discussing the tort of contractual interference states that "[i]ll will on the part of the actor toward the person harmed is *not an essential condition of liability under the rule stated in this Section.*" [Emphasis added.] The appropriate question then, in deciding whether a determination is essential to the judgment, is "whether the issue was actually recognized by the *parties* as important and by the *trier* as necessary to the first judgment." Restatement (Second) of Judgments § 27 comment j (1982) [emphasis added].

Landess alleged in the first action in federal court that Borden's "direct contact with the plaintiff's customers constituted a tortuous [sic] and wrongful deliber-

ate known act by the defendant corporation to ruin and destroy the equities and values and subsequent future profits of the plaintiff's business . . . ." We conclude from this allegation that Landess recognized the importance of the issue of the purpose of Borden's actions. The Seventh Circuit stated that one of the factors *"to be considered"* in determining whether Borden's conduct was privileged included the interest Borden sought to advance. *Landess, supra,* at 631 [emphasis added]. Although Landess alleged a destructive and deliberate purpose by Borden, the Seventh Circuit held that the purpose of Borden's actions was legitimate. *Id.* at 632. We conclude that the Seventh Circuit recognized the issue of the legitimacy of Borden's interference with Landess' contracts as necessary to the first judgment.

The milk haulers refer this court to *De Bobula v. Goss,* 193 F.2d 35 (D.C. Cir. 1951), and *Goodwin v. Home Buying Investment Co.,* 352 F. Supp. 413 (D.C. Cir. 1973), as support for their argument.

In *De Bobula* plaintiff was evicted from his apartment. *De Bobula, supra,* at 36. He charged in that action that his landlords had adduced false testimony. Plaintiff then brought an action, adding defendants not named in the first suit and alleging that they conspired to evict him by adducing false testimony. The court in the conspiracy action held that collateral estoppel barred plaintiff's second action. The court reasoned that although the other defendants were not parties to the first suit, this fact did not prevent an estoppel where the one exonerated in the first suit was the "immediate actor" and his personal culpability was necessarily the predicate of the plaintiff's right of action against the other defendants. *Id.*

In *Goodwin,* Home Buying Investment Company (HB IC) originally sued plaintiff on a contract for the sale of her home. *Goodwin, supra,* at 414. Plaintiff defended the suit on the grounds that she had been induced by

fraud to sign the contract of sale. The court in the prior action granted HBIC's motion for a directed verdict. *Id.* Plaintiff then instituted an action against HBIC, naming two additional parties not named in the prior suit. *Id.* at 415. Plaintiff alleged in the second action that the defendants conspired to defraud her of her title and withheld facts from the court in the prior action. *Id.* The *Goodwin* court held that *res judicata* barred the second action. *Id.* at 415–16. The court reasoned that "an allegation of conspiracy could not create a cause of action if the acts allegedly conspired in had been determined in a prior action not to be wrongful." *Id.* at 415–16 (citing *De Bobula, supra,* at 36).[6]

Here, Landess also adds defendants who were not named in the prior action. Landess' current action also involves an issue that was adjudicated in the prior action. The federal courts in the prior action in effect determined that Borden did not attempt to destroy Landess' business. In the current action Landess merely adds the conspiracy allegation, as did the plaintiffs in *De Bobula* and *Goodwin.* A conspiracy under sec. 134.01, Stats., requires a finding that Borden and the milk haulers attempted to destroy Landess' business. In the prior action, however, the federal courts determined that Borden did not attempt to destroy Landess' business. Therefore, it is impossible for Landess to prove a con-

---

[6] The *Goodwin* court articulated two rationales barring plaintiff's actions. First, it reasoned that the *De Bobula* conspiracy rationale barred plaintiff's action. *Goodwin v. Home Buying Inv. Co.,* 352 F. Supp. 413, 415–16 (D.C. Cir. 1973). Second, it ruled that *res judicata* applied because the individual defendants were in privity with HBIC since they took title to the property in dispute as trustees for HBIC. *Id.* at 416.

Since *De Bobula* was an independent basis barring plaintiff's action, *Goodwin* is not distinguishable from the instant action merely because the court found privity and applied *res judicata.*

*De Bobula* involved collateral estoppel, and no privity was found. *De Bobula v. Goss,* 193 F.2d 35, 36 (D.C. Cir. 1951).

spiracy between Borden and the milk haulers in violation of sec. 134.01, Stats.

It could be argued that acts which are not actionable when committed alone may be wrongful when done in combination and that, therefore, Landess should be allowed to bring the conspiracy action against the milk haulers. *See Radue, supra,* at 244, 246 N.W.2d at 510. A civil conspiracy is "a combination of two or more persons by some *concerted action* to accomplish *some unlawful purpose* or to accomplish by unlawful means some purpose not in itself unlawful." *Radue, supra,* at 241, 246 N.W.2d at 509 [emphasis added; citation omitted].

In the prior action in federal court, Landess not only alleged that Borden attempted to destroy his business, but also that Borden "did further wrongfully, knowingly and willfully demand other haulers with whom it had been doing business, to abide by its directive and to aid and assist in the interference with the contractual agreements theretofore existing between the plaintiff and his customers." We conclude, therefore, that in the prior tort action, Landess alleged concerted action between Borden and the milk haulers.

Additionally, in the prior action Landess alleged that "upon information and belief, said haulers were neither licensed nor authorized to enter into such territories and *to usurp the business and profits heretofore enjoyed by the plaintiff.*" [Emphasis added.] This allegation is equivalent to Landess' destructive purpose allegation against Borden. We hold that Landess alleged a common unlawful purpose between Borden and the milk haulers in the prior action. The federal courts held that the purpose for which Borden acted was legitimate. *Landess, supra,* at 632. Since Landess alleged a conspiracy between Borden and the milk haulers in the prior

action, we hold that the federal courts' finding that Borden's purpose was not wrongful precludes Landess from alleging here that the milk haulers' actions were wrongful.

We hold that the record establishes that the milk haulers may assert that collateral estoppel bars Landess' conspiracy claim against them. Judgment dismissing the complaint as to the respondents, Borden, the employees and the milk haulers is affirmed.

*By the Court.*—Judgment affirmed.

MOSER, J. (concurring in part; *dissenting* in part). I concur in the majority opinion that the trial court was correct in dismissing this case against Borden, Inc. and its employees under the doctrine of *res judicata.*

I dissent from the dismissal of the conspiracy claim under sec. 134.01, Stats., however, against Howard Gundrum, Janice Gundrum and John W. Hansen, the milk haulers, on either *res judicata* or collateral estoppel grounds. Clearly, *res judicata* does not apply. The milk haulers were not parties to the original action against Borden in federal court, nor were they Borden's privies. [1]

In this case Landess sues the milk haulers for conspiracy. The majority hinges its affirmance of the trial court, in part, on the fact that Landess cannot prove his conspiracy charge between Borden and the milk haulers because of the prior federal dismissal, but this ruling does not address whether the Gundrums and Hansen are conspirators among themselves under sec. 134.01, Stats.

The Gundrums and Hansen are two or more persons, Landess complains, who together willfully undertook to

---

[1] *DePratt v. West Bend Mut. Ins. Co.,* 113 Wis. 2d 306, 311, 334 N.W.2d 883, 885 (1983).

injure his trade or business[2] and thereby damaged him.[3] We must read complaints liberally.[4] A liberal construction of the complaint against the Gundrums and Hansen is that they conspired with each other, in violation of sec. 134.01, Stats., to Landess' civil damage. Landess is not, therefore collaterally estopped from litigating the issue of conspiracy among the milk haulers to ruin Landess' trade or business.

I would reverse that part of the judgment dismissing Landess' complaint against the Gundrums and Hansen and remand the matter for trial.

---

[2] Sec. 134.01, Stats.

[3] *Onderdonk v. Lamb*, 79 Wis. 2d 241, 247, 255 N.W.2d 507, 510 (1977); *Radue v. Dill*, 74 Wis. 2d 239, 245, 246 N.W.2d 507, 511 (1976).

[4] *Zinn v. State*, 112 Wis. 2d 417, 423, 334 N.W.2d 67, 70 (1983).