959 F.2d 238
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
COLUMBIA VITAL SYSTEMS, INC., Plaintiff-Appellant,
v.
BALLARD MEDICAL PRODUCTS, Defendant-Appellee.
 No. 90-3500.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 5, 1991.
Decided April 7, 1992.
 
 Before CUMMINGS and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 This case arises out of a somewhat bitter dispute between a manufacturer of medical products and one of its distributors. Plaintiff Columbia Vital Systems, Inc. ("Columbia"), an Illinois corporation with its principal place of business in Illinois, distributes sophisticated medical devices to hospitals. Defendant Ballard Medical Products ("Ballard"), a Utah corporation with its principal place of business in Utah, manufactures and sells medical products for hospitals. From September 1985 to July 1990, Columbia was Ballard's distributor in the Chicagoland area and Wisconsin. In August 1990, after being terminated as Ballard's distributor, Columbia filed a complaint for injunctive and other relief against Ballard in the Circuit Court of Cook County, Illinois. The complaint alleged that Ballard was tortiously interfering with Columbia's contractual relationship with some of its customers and that Ballard should honor purchase orders placed by Columbia with Ballard. To be precise, Count I alleged that Ballard interfered with Columbia's requirement contracts with Jackson Park and St. James hospitals in Chicago, and sought an injunction against Ballard from contacting or soliciting any of the 33 hospitals which Columbia ultimately signed to such contracts. Count II alleged breach of contract and sought mandatory injunctive relief against Ballard to fill Columbia's July 1990 purchase orders for over $1,000,000 in Ballard products. Damages were also requested.
 
 
 2
 Ballard removed this diversity case to the district court. After an extensive three-day hearing on Columbia's motion and after considering the parties' post-trial briefs, the district judge filed a memorandum opinion and order denying Columbia a preliminary injunction, thus prompting it to appeal. We affirm the district court's decision.
 
 FACTS
 
 3
 Ballard manufactures and sells a closed-suction catheter system known as its "Trach-Care" product as well as related products to hospitals. The Trach-Care product, which is patented, allows health care professionals to suction bodily fluids from a patient's trachea without contact with those fluids. A number of hospitals in the Chicagoland area and in Wisconsin use Ballard's products in intensive care units.
 
 
 4
 Columbia is a distributor of medical products focusing on hospitals in the Midwest. As a distributor, it buys products directly from manufacturers, warehouses the products, and resells them to its customers, which are hospitals. Columbia specializes in selling more sophisticated medical products that require a significant amount of training and support. In 1989, Columbia was a distributor for eighteen manufacturers, including Ballard; its sales of Ballard products accounted for about nine and one-half percent of its gross sales.
 
 
 5
 In September 1985, Ballard entered into an oral distributor relationship with Columbia. The parties never memorialized their agreement in writing, and also apparently never agreed to a specific term for the contract. The parties eventually clashed over Columbia's response to the entry of a competitor to Ballard (Concord) in the marketplace, and over Ballard's right to bypass Columbia and sell its products directly to hospitals. Columbia believed that Ballard's product was superior to Concord's and therefore Ballard should not cut its prices in response to Concord's entry in the market. Ballard disagreed, and when Columbia refused to lower its prices to some hospitals, it sold its products directly to these hospitals at lower prices.
 
 
 6
 Columbia protested that these direct sales violated its distributorship arrangement. The testimony at the preliminary injunction hearing indicated, however, that Ballard had previously dealt directly with Veterans hospitals as well as the Cook County hospital account because Columbia did not wish to reduce its prices. Ballard employed its own salespersons in the Chicago area for these reasons, and some hospitals had a closer relationship with Ballard than with Columbia. For example, the Illinois Masonic Medical Center in Chicago purchased and used Ballard's Trach-Care products for three years. A Ballard-employed sales representative made the sales to Illinois Masonic which prefers the Ballard Trach-Care products to those of the Concord Company, a competitor. Ballard personnel trained the Illinois Masonic intensive care nurses to use the product. If Illinois Masonic had a problem with this product, it called a Ballard representative.
 
 
 7
 In May 1990, Columbia advised Ballard that it would discontinue making sales calls to secure new Ballard business and would no longer provide in-service education as to Ballard products. At the same time, without Ballard's knowledge and when it knew its status as a distributor of Ballard products was shaky, Columbia was signing Ballard customers to agreements to purchase Ballard Trach-Care products from Columbia for two-year periods. The agreements referred in large print to specific Ballard products, and locked the parties into a particular price. Although the agreements referred in small print to sales of a Ballard product "or its equivalent," the hospitals were never told that Columbia was considering substituting Ballard's competitor Concord for Ballard under the agreement.[1] Ballard asserts that it did not learn of these agreements until after this litigation commenced.
 
 
 8
 On June 18, 1990, Ballard gave notice to Columbia that it was terminating its distributorship agreement effective July 15, 1990. Columbia's counsel conceded below that this termination was valid (Tr. 403). After Ballard had given notice of termination to Columbia, but before termination was effective, Columbia placed one order for about $88,000 worth of products and another order for two years for over $1,000,000 worth of the Trach-Care products--an unprecedented amount. It placed the larger order so that it could supply Ballard products to fill the requirement contracts Columbia had entered into with hospitals.
 
 
 9
 Ballard responded to Columbia's two orders in a July 17, 1990, letter by reminding Columbia that Ballard was still owed $153,295.69 for prior purchases and that Ballard would not accept orders from Columbia until this amount was paid. As to the larger order, Ballard stated that it could not accept it because it was not in the realm of good business, i.e., it was unreasonable. After Columbia paid the $153,295.69 due, Ballard agreed to ship the $88,000 order if Columbia paid for the shipment up-front. Thereafter Ballard wrote the hospitals in Columbia's market area informing them that it had terminated Columbia's right to distribute Ballard products and would in the future distribute those products directly to the hospitals "until alternate distribution is resolved."
 
 
 10
 Columbia on July 3, 1990, offered to settle this controversy in return for Ballard's buying back Columbia's supposed distribution rights for $804,000, even though there was no indication that Ballard's termination of Columbia was unlawful, and Columbia's attorney admitted below that Ballard had lawfully terminated Columbia's distributorship arrangements.
 
 DISCUSSION
 
 11
 Despite the myriad of issues raised by the parties, the denial of preliminary relief to Columbia was justified because Columbia conceded at the hearing below that Ballard had validly terminated it as a distributor on June 18, 1990 (Tr. 403). Thereafter Ballard was of course free to sell its products directly to hospitals and not to Columbia. Monsanto Co. v. Spray-Rite Service Corp., 465 U.S. 752, 761; Landess v. Borden, Inc., 667 F.2d 628, 632 (7th Cir.1981). Columbia's agreements with the hospitals are a disingenuous attempt to distribute Ballard products without a contract to do so, and were entered into without notice to Ballard and without telling the hospitals that Columbia contemplated using Concord products. Ballard cannot be held liable for "interfering" with these agreements.
 
 
 12
 Since no new distributorship agreement was entered into between Columbia and Ballard, Columbia was no longer entitled to sell Ballard products to hospitals. Having no distributorship rights after July 15, 1990, Columbia of course is not entitled to an injunction requiring Ballard to fulfill Columbia's $1,000,000 ± order. Such relief would effectively extend Columbia's status as a distributor for two years and negate Ballard's legal cancellation of the distributorship. In addition, Ballard has substantially performed with regards to the $80,000 order by agreeing to ship the product if paid up-front.[2]
 
 
 13
 Even if Ballard breached its 1985 distributorship agreement with Columbia, the latter is entitled to damages for breach of contract rather than the preliminary injunction sought in prayer A of its complaint. As the district judge rightly held:
 
 
 14
 If there was a breach of the distributorship agreement during the life of it, then the plaintiff has a remedy at law in the form of calculable damages it allegedly suffered as a result of the defendant's breach. The alleged breach of the distributorship agreement cannot be the basis for prospective injunctive relief. R. 42.
 
 
 15
 Order affirmed.
 
 
 
 [1]
 Illinois Masonic hospital considered the Concord product "clinically unacceptable."
 
 
 [2]
 Columbia's belated payment of $153,295.69 to Ballard was for prior shipments from Ballard and did not constitute a Ballard acceptance of Columbia's two orders